# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| **JUDITH E. HANEY** | ) | **Case No. 21-02007-TOM-13** |
| | ) | |
| Debtor. | ) | |

| | | |
|---|---|---|
| **JUDITH E. HANEY,** | ) | |
| | ) | |
| Plaintiff, | ) | **A.P. No. 21-00045-TOM** |
| **vs.** | ) | |
| | ) | |
| **WILLIAM DENNIS SCHILLING,** | ) | |
| **ANDRE M. TOFFEL, and CHRISTIAN** | ) | |
| **& SMALL LLP,** | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER
## ON NOTICE TO SHOW CAUSE WHY THE BANKRUPTCY CASE
## AND THE ADVERSARY PROCEEDING SHOULD NOT BE DISMISSED

This case came before the Court for hearing on December 20, 2021, on the Court's Order

for a Hearing to Be Scheduled and Noticed for Debtor and Any Party to Show Cause Why the

Bankruptcy Case and the Adversary Proceeding Should Not Be Dismissed Immediately (BK Doc.

307, AP Doc. 42, the "Show Cause Order").[1] Appearing before the Court telephonically[2] were

---

[1] When the Show Cause Order was entered it referenced both the bankruptcy case and the related adversary proceeding. Since the December 8, 2021 entry of the Show Cause Order and the Order Directing the Debtor and All Parties to Cease Repetitive Filings and Authorizing Enforcement of This Order (BK Doc. 306), there have been few filings in the adversary proceeding. The Court's Order Denying Recusal Motions (BK Doc. 352) was entered on January 21, 2022 and thereafter the Court set approximately fifteen matters that were pending in the adversary proceeding for a hearing on February 7, 2022. On February 10, 2022, the Court stated on the record its ruling on those matters and entered an Order Adopting the Oral Ruling. BK Doc. 422, AP Doc. 85. Thus, at this time, no further action is necessary in the adversary proceeding pursuant to the Show Cause Order and this Order only addresses possible sanctions in the Bankruptcy case.

[2] This Court held virtually all hearings in person prior to the middle of March 2020. From March 2020 through December 2021 most hearings were telephonic, but when the Court deemed it appropriate, some hearings or trials

Judith E. Haney (the "Debtor")[3] and Bradford W. Caraway, the Chapter 13 Trustee. Appearing before the Court in person were William Dennis Schilling, Defendant; Andre M. Toffel, Defendant; Daniel D. Sparks for Christian & Small LLP, Defendant; Joseph E. Stott for Andre M. Toffel, and Jon A. Dudeck, attorney for the Bankruptcy Administrator. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 151, and 157(a) and the District Court's General Order of Reference Dated July 16, 1984, as Amended July 17, 1984.[4] This is a core proceeding arising under Title 11 of the United States Code as defined in 28 U.S.C. § 157(b)(2)(A).[5] The Court has considered all of the pleadings, the arguments, and the law, and finds and concludes as follows.[6] The Court adopts all of the findings and conclusions from all of its prior orders entered thus far in the bankruptcy case and in the adversary proceeding.

### FINDINGS OF FACT[7]

The Debtor filed her bankruptcy case, originally as a Chapter 7, on August 26, 2021.[8] At the outset a filing by the Debtor's former counsel got this case off to a rocky start. The same day

---

were held in person. In December 2021 this Court announced that beginning January 1, 2022 all hearings would be held in person.

[3] The Debtor is appearing *pro se*.

[4] The General Order of Reference Dated July 16, 1984, As Amended July 17, 1984 issued by the United States District Court for the Northern District of Alabama provides:

> The general order of reference entered July 16, 1984 is hereby amended to add that there be hereby referred to the Bankruptcy Judges for this district all cases, and matters and proceedings in cases, under the Bankruptcy Act.

[5] 28 U.S.C. §157(b)(2)(G) provides as follows:

> (b)(2) Core proceedings include, but are not limited to–
> (A) matters concerning the administration of the estate[.]

[6] This Memorandum Opinion and Order constitutes findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, applicable to adversary proceedings in bankruptcy pursuant to Federal Rule of Bankruptcy Procedure 7052, and applicable to contested matters in bankruptcy pursuant to Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Bankruptcy Procedure 9014.

[7] Pursuant to Rule 201 of the Federal Rules of Evidence, the Court may take judicial notice of the contents of its own files. *See ITT Rayonier, Inc. v. U.S.*, 651 F.2d 343 (5th Cir. 1981); *Florida v. Charley Toppino & Sons, Inc.*, 514 F.2d 700, 704 (5th Cir. 1975).

[8] Originally the bankruptcy case was assigned to Bankruptcy Judge D. Sims Crawford and Chapter 7 Trustee James G. Henderson. On September 7, 2021 James G. Henderson rejected his appointment as Chapter 7 Trustee and Andre M. Toffel was appointed as the new Chapter 7 Trustee. On September 8, 2021, the Debtor's bankruptcy case was reassigned for cause to this Court.

2

her bankruptcy petition was filed her former counsel filed the Debtor's unredacted bank account statements as her employee income records. BK Doc. 4. On September 7, 2021, the Debtor's former counsel filed a Motion to Redact (BK Doc. 13) as well as a Motion to Withdraw (BK Doc. 14) as her bankruptcy counsel on the grounds that he and the Debtor experienced a "breakdown in communications" and that the Debtor had terminated his employment. BK Doc. 14, at 1. Attached to the Motion to Withdraw was an email from the Debtor to her former counsel advising him that she was "filing a complaint against you with the Alabama State Bar for malfeasance" and opining that "I believe you are unfit to continue representing anyone. You are clearly impaired and your impairment has caused and is causing me very serious, irreparable, harm." BK Doc. 7, at 2. The former counsel's Motion to Withdraw was granted on September 9, 2021. BK Doc. 23. The Debtor has been *pro se* since that date.

On September 8, 2021, the Chapter 7 Trustee filed an Application for Approval of Employment of Professional Person (BK Doc. 20, the "Application to Employ") seeking to employ attorney William Dennis Schilling ("Schilling") as counsel for the Chapter 7 Trustee. According to the Application to Employ:

> 3. The specific facts showing the necessity for the employment here requested are as follows:
>
> Complicated case involving analysis of potential causes of action, decision as to whether to file adversary proceeding and if so to prosecute same as well as various other analysis and assistance for which legal assistance is required.

BK Doc. 20, at 2. Importantly, the Application to Employ also contains the following language:

> 1. The person whose employment is requested (hereinafter "said person")
> . . . .
>    (c) is a disinterested person as that term is defined in § 101(14) of the Bankruptcy Code[.]

3

BK Doc. 20, at 2.[9]   The same day Schilling filed a Notice of Appearance and Request for Service (BK Doc. 21). On September 13, 2021, the Chapter 7 Trustee filed a document entitled Case Status Change (BK Doc. 30), explaining that since the time the original notice of the meeting of creditors had been sent out, indicating that no assets would be available to pay creditors, he had "discovered property of the estate which [he] would reduce to cash. After payment of administrative expenses, it appears there will be a distribution to unsecured creditors."  BK Doc. 30, at 1. A little less than four hours later, the Clerk's Office entered a Notice to File Claims (BK Doc. 31) informing creditors that "there may be assets from which a dividend could be paid in this case." BK Doc. 31, at 1. Importantly, the Notice to File Claims was prepared and signed by the Clerk's Office, not the Chapter 13 Trustee.

Also on September 13, 2021, the Debtor filed a document entitled Withdrawal of Chapter 7 Petition Case No. 21-02007-DSC7 (BK Doc. 32, the "Withdrawal of Petition")[10] indicating that the Debtor wanted to "withdraw" her bankruptcy petition as she was in a position to pay her creditors and wanted to avoid "further harm to her creditors and to herself." BK Doc. 30, at 1. The Withdrawal of Petition was followed by an Amended Motion to Voluntarily Dismiss Chapter 7

---

[9] On September 14, 2021, an Amended Notice and Order Approving Employment of Attorney (BK Doc. 37, the "Amended Notice and Order") was entered, providing that the Application to Employ would be deemed approved unless a written objection was filed within 21 days after entry of the Amended Notice and Order. No objections to the Amended Notice and Order were filed.

[10] Because this case was initially filed as a Chapter 7 case, the Debtor does not have an automatic right to dismissal, and a party in interest may request that the case be reconverted to Chapter 7 if conversion "is in the best interests of creditors and the estate, for cause . . . ." 11 U.S.C. § 1307(b)-(c). *See In re Baker*, 289 B.R. 764, 769 (Bankr. M.D. Ala. 2003) ("[A debtor's] freedom to dismiss a converted case is restricted by Section 1307(b) and (c). A previously converted Chapter 13 case may be dismissed only upon a showing of cause, which is in the discretion of the court.") In fact, Schilling filed a Motion to Reconvert Case to Chapter 7 on November 2, 2021. BK Doc. 174. Schilling's Motion was deemed moot by this Court's January 24, 2022 Order Finding Multiple Pending Matters Regarding Dismissal and Conversion to be Moot. BK Doc. 371.

In this case, based on the hostility and animosity that has occurred and is still reflected in recent pleadings, conversion back to chapter 7 may not be an appropriate remedy. If the amount of necessary administrative expense involved in a chapter 7 is high, which the Court speculates might be the situation, then there is not a clear benefit to Debtor, creditors or parties in interest. These issues and factors are part of the Court's consideration regarding the Show Cause Order. If a conversion to chapter 7 might be applicable based on 11 U.S.C. § 1307(b) and (c), and if that outcome may not be appropriate given the particular facts in this case, then a dismissal of the case with prejudice (i.e., a bar to refiling another case) may be considered by a court.

4

Petition Case No. 21-02007-DSC7 on September 14, 2021 (BK Doc. 40, the "Amended Motion to Dismiss").[11] In that document, the Debtor goes into more detail regarding her dispute with her former counsel and also expresses her displeasure with the Chapter 7 Trustee. Regarding the Case Status Change, the Debtor stated:

> Movant avers that if any assets of any value existed prior to filing her petition that common sense dictates that the Movant would have liquidated them herself rather than pay 24% interest rates to credit card companies. The Trustee's suggestion that there are assets to be liquidated to cover indebtedness after the Movant's lawful exemptions are deducted is utter nonsense, is not truthful, and is not based upon any facts.

BK Doc. 40, at 3. In addition, the Debtor states "[t]he Trustee's accusation that she is hiding assets is patently false and his assertions have irreparably damaged the Movant's reputation . . . . The Trustee's actions in that regard are reprehensible and unethical." BK Doc. 40, at 4. Also in the Debtor's Amended Motion to Dismiss she somewhat inconsistently addresses her income and ability to pay her creditors. For instance, the Debtor asserts that when her bankruptcy petition was filed she "was current in all payments to all of her creditors" and that her "income as a self-

---

[11] It is worth noting that since that time, the Debtor has changed her mind several times regarding whether her case should proceed, as indicated by the motions and withdrawals of motions that she has filed. The following were filed by the Debtor regarding whether or not she wanted to move forward with her case after her initial Withdrawal of Petition and subsequent Amended Motion to Dismiss:

| | |
|---|---|
| 09/20/21 | Withdrawal of Motion to Dismiss Chapter 7 Petition (BK Doc. 49) |
| 09/20/21 | Motion to Convert From Chapter 7 to Chapter 13 by a Debtor (BK Doc. 51) |
| 10/29/21 | Debtor's Motion to Dismiss Chapter 13 Petition (BK Doc. 155) |
| 11/02/21 | Debtor's Amended Motion to Dismiss Chapter 13 Petition (BK Doc. 180) |
| 11/08/21 | Withdrawal of Motion to Dismiss Chapter 13 Bankruptcy Petition (BK Doc. 220) |
| 12/06/21 | Debtor's Motion to Dismiss Chapter 13 Petition (BK Doc. 286) |
| 12/13/21 | Judith E. Haney's Withdrawal of Motion to Dismiss Chapter 13 Bankruptcy Petition (BK Doc. 316) |

The Debtor's Motion to Convert Case to Chapter 13 was heard by the Court on October 21, 2021 and was granted by Order entered October 21, 2021. BK Doc. 78. A Conversion Notice was entered on the docket sheet by the Clerk's Office the same day. BK Doc. 83.

employed certified real estate appraiser is anticipated to be adequate to meet her debt repayment." BK Doc. 40, at 1. A few pages later the Debtor states "[a]t the time the Movant contacted her former attorney for assistance with her petition she had $300 to her name, no available credit, and no way to meet her pending obligations." *Id.* at 4. Thus, in one document, the Debtor claims both that she can and cannot pay her debts. The Debtor's inconsistent statements, along with other statements made by the Debtor, some of which will be identified herein, causes the Court concern that she is not being completely forthcoming with her representations to the Court.

This Court scheduled a telephonic hearing[12] for October 18, 2021 on the Debtor's Withdrawal of Petition and Amended Motion to Dismiss, but on September 20, 2021, less than one week after the Amended Motion to Dismiss was filed, the Debtor filed a Withdrawal of Motion to Dismiss Chapter 7 Petition Case No. 21-02007-DSC7 (BK Doc. 49), a Motion to Convert Case to Chapter 13 (BK Doc. 51, the "Motion to Convert"), and the Debtor's Motion For Approval to File Documents Via Pacer EM/ECF [sic] (BK Doc. 52, the "Motion to File Via CM/ECF"), all of which were set for hearing on October 18, 2021. In the Motion to File Via CM/ECF the Debtor takes issue with the local procedures for those acting *pro se* to file pleadings, motions, or other documents into the Court's EM/ECF system,[13] asserting that she should be able to electronically file documents upon receiving the required training.[14] The Debtor did not participate in the October

---

[12] At that time all hearings were being held telephonically due to the pandemic.

[13] The procedure for *pro se* filings is dictated by Local Bankruptcy Rule 5005-4 which provides that "[a] party without legal representation may file his or her documents in paper, and the clerk's office will process any such filing through CM/ECF." Bankr. N.D. Ala. R. 5005-4.

[14] Earlier in her case the Debtor filed a Motion to Seal in which she stated that she had been "barred" from filing the Motion via the Court's CM/ECF system. BK Doc. 17, at 2. Using the Debtor's choice of words, it may be said that all *pro se* debtors are "barred" from filing via CM/ECF pursuant to Local Bankruptcy Rule 5005-4. In the Motion to File Via CM/ECF the Debtor asserts that she has a round-trip of 35 miles to drive to submit her documents to the Clerk's Office for filing. Other *pro se* debtors before this Court may have significantly longer drives to and from the courthouse as this Court serves Blount, Jefferson, and Shelby counties.

In an effort to accommodate the Debtor early in the case, the Clerk's Office allowed this Debtor, and other pro se parties, to email pleadings to a specific email address for entry by the Clerk's Office. In a letter dated November 29, 2021, the Clerk of Court notified that the Debtor that several Bankruptcy Judges would resume in-person hearings as of January 1, 2022, and the Clerk's Office would be returning to its pre-pandemic policies; thus, the Debtor would

18, 2021 telephonic hearing so the matters were rescheduled to be heard telephonically on October 21, 2021 to allow the Debtor an opportunity to participate. The hearing went forward as scheduled and this Court's Order granting the Motion to Convert and denying the Motion to File Via CM/ECF was entered the same day.[15] BK Doc. 78.

On the same day as the hearing, and after the Order converting the case was entered, Schilling filed a Final Application for Compensation and Expenses (BK Doc. 81, the "Application for Compensation") requesting $4,000 in compensation and $51.53 in expenses for a total of $4,051.53. Attached to the Application for Compensation is a copy of his "Pre-bill Worksheet" detailing his work, time spent, and charges incurred as counsel for the Chapter 7 Trustee.[16]

Soon thereafter, on October 25, 2021, the Debtor filed her Debtor's Objection to Trustee's Fees Filed by Dennis Schilling (BK Doc. 104, the "Objection to Compensation").[17] Throughout the Objection to Compensation the Debtor accuses the Chapter 7 Trustee and Schilling of various misdeeds and bad motivations: "Toffel's refusal to temporarily halt his operation . . . runs contrary to the Trustee's requirements to treat the Debtor fairly," "their mutual actions were biased and wrongheaded, and consistent with their arrogance and misplaced sense of being untouchable and

---

no longer be able to email her filings to the Clerk's Office. *See* BK Doc. 257, Ex. B. The letter notified the Debtor of the option to mail documents to the Clerk's Office for entry. *Id.* The letter also provided that, instead of sending an email to a specific employee, any further email communications should be sent to a general email address that multiple employees have access to, and the email would be forwarded to the proper person. *Id.* As an aside, each employee has a specific email inbox that generally may only be accessed by the specific employee; thus, an email sent to a specific person would remain unread if the person was out of the office for a period of time. Emails sent to the general email inbox would be seen by one or more people regardless of who may be out of the office.

[15] Also set for hearing was the Debtor's Motion for Continuance of Meeting of Creditors Scheduled on September 27, 2021 at 1:00 p.m. (BK Doc. 50), which was mooted due to the conversion of the case to Chapter 13.

[16] In the Objection to Compensation the Debtor states that "[t]he $5728.27 amount is not reasonable." Schilling's Pre-bill Worksheet indicates that he incurred fees and expenses in the total amount of $5,728.53. In his Application for Compensation Schilling actually requested reduced fees and expenses in the total amount of $4,051.53.

[17] The Debtor incorrectly identifies the Chapter 7 Trustee as the filer of the Notice to Creditors to File Claims. This document was prepared and entered by the Clerk's Office as it routinely does whenever a Chapter 7 trustee indicates that he has discovered assets that should be investigated.

7

above reproach," and that the Chapter 7 Trustee "not once has . . . undertaken to audit anyone with so little unsecured debt and so few tangible assets, yet he targeted the Debtor."[18] Doc. 104, at 3-4.

The same day the Objection to Compensation was filed, Schilling replied by filing a Response to Debtor's Objection to Trustee Counsel's Fees (BK Doc. 108, the "Response to Objection to Fees) as well as six other documents in the Debtor's case including a Notice of Appearance and Request for Service (BK Doc. 107), and a Notice (BK Doc. 113) that he had served a Request for Production of Documents on the Debtor. Each of the docket entries for the documents filed by Schilling identify him as an "interested party." In the Response to Objection to Fees, Schilling describes the Debtor as an "angry person . . . [who] feels persecuted by anyone who does not follow her edicts." BK Doc. 108, at 1. Schilling asserts that the Debtor "likes to fight" and notes that in the Debtor's prior bankruptcy case in Arkansas she referred to the court as "[a] kangaroo court [and] arrogant."  BK Doc. 108, at 2 (citing *Fureigh v. Haney (In re Haney)*, 238 B.R. 428 (Bankr. E.D. Ark. 1999)).

Seemingly in reaction to the Response to Objection to Fees, the Debtor filed, on October 26, 2021, a Debtor's Motion for Temporary Injunctive Relief Against William Dennis Schilling Pursuant to Fed. R. Civ. P. Rule 65 (BK Doc. 119, the "Motion for Temporary Injunction") in which she accuses Schilling of "revenge taking" against her. Further, the Debtor takes issue with Schilling claiming to be a "person of interest." From this time until the present, the Debtor proceeded to file numerous motions, objections, supplements, and other documents primarily directed against Schilling, who identifies himself as an interested party, and against this Court for

---

[18] The Debtor does not explain how she arrived at this conclusion. Andre Toffel, the Chapter 7 Trustee, has administered thousands of cases throughout his thirty plus years as a chapter 7 Trustee and it would have been very difficult, if not impossible, for the Debtor to go through them all. The Trustee has a duty to investigate potential assets available to creditors; all of the Chapter 7 Trustees acting in this District investigate when there is not enough information in the schedules to provide a clear picture of value. This does not mean that the Trustee is necessarily accusing a debtor of wrongdoing but, instead, performing the duties required. Additionally, Debtor's unsecured debt is not "little;" based on the claims filed, she has approximately $74,000 in unsecured debt.

what she claims is the Court's refusal to prevent Schilling from taking part in her case and its failure to rule on her multiple filings. According to the Debtor, Schilling's references to himself as an "interested party" and, as perceived by the Debtor, this Court's failure to block Schilling's participation demonstrates that the Court is refusing to perform the duties of its office, evidences the "cronyism" between the Court and Schilling, and reveals the Court's bias and prejudice against her. In addition, the Debtor continues to accuse the Court and Schilling of "revenge taking" against her.

A cursory review of the docket sheet in this case shows the sheer volume of docket entries, now numbering over 400, in a case which has only been pending since August 26, 2021.[19] A spot review of the Debtor's filings reveals that in most every document filed by the Debtor she makes malicious accusations of unethical behavior and misdeeds against Schilling, the Court, and at times against almost everyone involved in this case.[20] Further, the Debtor, particularly in regard to

---

[19] So many motions, objections, supplements, and other documents have been filed in this case that this Court found that the most efficient route would be to address related pending matters in one order for each group. For example, this Court's Order Finding Multiple Pending Matters Regarding Dismissal and Conversion to be Moot (BK Doc. 371, the "Order Finding Matters Moot") was entered on January 24, 2022. This Order disposed of BK Docs. 155, 170, 171, 174, 180, 184, 185, 194, 206, 220, 286, 296, 297, and 315.

In the Order Finding Matters Moot this Court explains:

> As the docket sheet in this case reflects, after the Court entered its Order Denying the Recusal Motions, it entered several orders to dispose of dozens of pending matters that were not crucial to Debtor's attempt to confirm a Chapter 13 Plan. This Court seeks to provide Debtor every reasonable opportunity to demonstrate her ability and willingness to pay her creditors and confirm a chapter 13 repayment plan.

BK Doc. 371, at 5. It is important to remember that the purpose of this bankruptcy case is to help the Debtor gain control over her finances and leave this Court with her long-term debts current and her unsecured debts discharged. So many filings in this case have nothing to do with the Debtor achieving that goal. This Court feels its obligation is to keep the focus of this case on the goal and not become too bogged down with extraneous issues that detract from the goal. Having said that, it is still important for this Court to maintain control of this case and ensure that all parties act with civility and the proper decorum.

[20] A few accusations (there are plenty to choose from) taken from a small number of the Debtor's filings:
-- Motion to Seal Debtor's Employee Income Records, Pages 1-16 (BK Doc. 17). As to her former attorney the Debtor states "she has been irreparably damaged by [the attorney's] malfeasance . . . [and] is now placed in the untenable position of having to correct the numerous mistakes [the attorney] made in her Chapter 7 petition." BK Doc. 17, at 1.
-- Debtor's Objection to Trustee's Fees Filed by Dennis Schilling (BK Doc. 104). In this document, the Debtor takes on the Clerk's Office, the Chapter 7 Trustee, and Schilling.

9

Schilling, brings up aspects of others' professional and personal lives that have nothing to do with

the Debtor's case.[21]

---

As to the Clerk's Office, she states "[a]s a result of the clerks [sic] failure to immediately file the Debtor's Motion . . . the record does not accurately reflect that she 'filed' her Motion before emailing it to the Trustee that morning." BK Doc. 104, at 2. As to the Chapter 7 Trustee and Schilling, she alleges that "their mutual actions were biased and wrongheaded, and consistent with their arrogance and misplaced sense of being untouchable and above reproach." BK Doc. 104, at 3.
-- Debtor's Renewed Objection to Payment of William Dennis Schilling's Attorney's Fees (BK Doc. 248). The Debtor takes issue with the Bankruptcy Administrator's statement of review of Schilling's Application for Compensation, stating:

> 3. In an appalling disregard for the concerns raised by the Debtor in Document 104 . . . the court administrator filed Document 245 alleging a "review" of Document 81 by an unnamed "bankruptcy attorney" also referenced to as "ba." [sic]

BK Doc. 248, at 1.
-- Response and Motion to Dismiss Counterclaim (AP Doc. 21). In this document, the Debtor turns her attention to Schilling, the Chapter 7 Trustee, the "court administrator" [presumably the Bankruptcy Administrator], the Court, and the law firm of Christian & Small LLP all at once:

> 3. In searching for a plausible answer for why the court and the administrator are turning a blind eye to Schilling's wrong doing, it calls into question their relationships with him. For example, is it possible that Schilling has played host to the jurist, and/or the administrator, or others who are influential in paying his invoices? Has he used his Key West, FL, get-a-way to influence those in authority with the court?
> . . . .
> 7. . . . [T]he court administrator and the judges are conveniently turning their attention elsewhere. while [sic] simultaneously admonishing the Debtor who dares to ask a pertinent question concerning Schilling's misconduct.
> 8. It's no wonder that Schilling reacted with out-of-control rage at the Debtor raising the issue of his overbilling. He is free from any and all scrutiny. He can bill whatever he wants, and no one cares. It's just one more of those dirty little secrets hiding in the cracks of the U.S. Bankruptcy court's history.
> . . . .
> 11. Presently the Debtor's claims against Schilling, Andre M. Toffel, and the law firm of Christian & Small LLP have resulted in a fraudulent counter claim filed against her by Schilling.
> . . .
> 12. And the jurist who is refusing to recuse upon the Debtor's motion that she do so, is in line to hear the counter claim. How convenient. But then Schilling knew that when he unlawfully removed the case from state court. Very convenient indeed to remove this case to be decided by someone who has turned the other way – for years – while he overbilled the poor who could least afford to be overbilled.
> . . . .
> 16. The answer to that question is found inside the walls of the law firm of Christian & Small LLP, a group of lawyers who eschew the Model Rules of Professional Conduct and use their political connections to further their nefarious interests, no matter who it hurts in the process.

AP Doc. 21, at 1-3, 4.
[21] There is no need to look any further than the Response and Motion to Dismiss Counterclaim (AP Doc. 21) referenced in the above footnote to find a perfect example:

By early December 2021, there were close to 300 docket entries in this bankruptcy case, most related to documents filed by the Debtor. Virtually all of the documents she filed included vicious accusations like the ones included in footnote 20. On December 7th and 8th alone, the Debtor submitted almost a dozen documents for filing into her case. Almost all were repetitious of already-filed documents; some were supplements that simply "piled on" regarding the inflammatory accusations against Schilling, the Court and others. Meanwhile, the Debtor's multiple documents seeking recusal had not been heard and the Court was hesitant to rule on other pending matters. In an effort to stop the overwhelming deluge of unnecessary, duplicative, and abusive filings, on December 8, 2021, the Court entered its Order Directing the Debtor and All Parties to Cease Repetitive Filings and Authorizing Enforcement of this Order (BK Doc 306, AP Doc. 41). The Court also entered its Order for a Hearing to be Scheduled and Noticed for Debtor and Any Party to Show Cause Why the Bankruptcy Case and the Adversary Proceeding Should Not be Dismissed Immediately (BK Doc. 307, AP Doc. 47); a hearing was held on this Show Cause Order, and this Memorandum Opinion and Order is the result of the Show Cause Order and hearing. As the Show Cause Order provided, the hearing was to allow any party, including the Debtor, to show cause why sanctions should not be imposed to stop the abusive filings and conduct

---

13. Schilling is a very wealthy man. He owns office buildings and over 50-income producing properties. He owns expensive real estate in Key West, Florida. He owns other personal homes. He has a law practice and other business interests, all of which are of record in the office of the Alabama Secretary of State. In spite of his enormous wealth, Schilling [took out a loan] claiming that he needed help to meet his "payroll and utilities." How utterly pathetic and how utterly in keeping it was for Schilling to claim he needed a low interest loan. But what he did in that instance is similar to what he does when he overbills the poorest of the poor in bankruptcy court. The moral to Schilling's story is that he can never get enough of what he doesn't need. It's some quirk that drives him to engage in conduct that is harmful to others while enriching himself. The same quirk also drives him to harm and harass the Debtor because he enjoys it. Gets a kick out of it. Brags about it to his fellow lawyers.

AP Doc. 21, at 3. The Response and Motion to Dismiss Counterclaim could be quoted in its entirety as an example of a document that has vicious, sarcastic, and hateful accusations in almost every paragraph of its five pages of document text.

and to deter future abusive conduct in the case.[22] Debtor elected to appear telephonically and thus presented no evidence to demonstrate that dismissal based on her filings would be inappropriate.

Recently, while this Court has been deciding and ruling on dozens of matters in this case, the Debtor has referred to this Court as "a very disturbed and disturbing individual" who "appalling[ly] . . . set her disordered thoughts to paper and filed them inside of a legal proceeding for the world to read." BK Doc. 398, at 3. In addition, she has claimed that this Court "shamefully and cruelly ignored the health of the Debtor and ignored the advice of her physician to limit her activities. In so doing, Judge Mitchell flagrantly violated the Code of Judicial Conduct Canon 2A." *Id.* at 2. As to Schilling, she attempts to minimize his knowledge of property valuation by stating that "[d]etermining 'objective' value is what the Debtor does for a living and has done since 1985 when Schilling was still a wet behind the ears law licensee with less than two years' experience chasing ambulances."[23] BK Doc. 347, at 2. These are just a couple of examples of the type of

---

[22] This Debtor is familiar with the imposition of sanctions; in a previous bankruptcy case, monetary sanctions were imposed against the Debtor for her failure to comply regarding discovery requests. See *In re Haney*, 234 B.R. 743 (Bankr. E.D. Ark. 1999).

[23] There has been a certain amount of back and forth between the Debtor and Schilling, and not all of the words and phrases used by him have been kind either. However, once this Court ordered that repetitious filings were to be stopped, Schilling complied with this Court's order; he did stop, and he softened his tone. The Debtor complied with the Order for a very short time but eventually she resumed filing documents that violated this Court's Order. Further, the Debtor's vitriol continued, if not increased. Eventually the Debtor flagrantly disregarded the Court's Order, filing a "renewed" motion asking for relief that the Court had already denied (as the Debtor acknowledged in her renewed motion). *See* Judith E. Haney's Motion to Strike Document 330 Pursuant to Rule 12(f) (BK Doc. 341), Order Denying as Moot (BK Doc. 342), and Judith E. Haney's Renewed Motion to Strike Document 330 Pursuant to Rule 12(f) (BK Doc. 347).

In the Renewed Motion to Strike Document 330 Pursuant to Rule 12(f), filed on January 18, 2022 (the 347th entry in the docket sheet), the Debtor states "[o]n Jan. 5, 2022 William Dennis Schilling (Schilling) proffered his 27th improperly filed pleading in Debtor's Chapter 13 bankruptcy case (Document 330)." BK Doc. 347, at 1. As of this Court's last count on January 12, 2022, the Debtor herself had filed over 100 documents (not including documents filed on her behalf when she was represented by counsel). As of February 4, 2022, the total entries in the docket numbered 416. Of course, the Debtor did not personally did not file over 60 documents after January 18, 2022. Many of the entries are administrative entries either regarding service, noticing hearings, or relating to the Debtor's appeals of three of this Court's orders. The Court mentions the number of docket entries only to illustrate the sheer volume of filings in a short amount of time in what should be a straight-forward Chapter 13 case that would normally, after six months, include 40-60 entries at most.

derogatory and malicious statements that the Debtor has made throughout the course of this case.[24]

At the hearing held on January 19, 2022 on the Debtor's various motions seeking this Court's

recusal from her bankruptcy case, Ms. Haney argued the following:

> I have stated facts. I have stated information, and that's not targeting. That's citing information. That – that's registering valid objections to matters that have direct bearing upon me and my case. So when I'm accused of "targeting" someone, I don't think that's correct at all. I think that's – that's a biased statement. I think that shows a lack of objectivity.
>
> . . . .
>
> [M]y concerns have been registered inside of those pleadings, filed in motion months ago; no action whatsoever taken. Meanwhile the concern have – have continued to occur, that the matters that I objected to and raised continue to occur and without any – any resolution, no cessation – cessation of the abusive conduct, no – no stopping the harassment of me via the Court. And there's no reason for me to believe that I'll ever see a positive outcome or any kind of reasonable outcome as long as you sit in – in judgment of this case.
>
>   And I – I do not believe that you are unbiased. I believe you are biased. I believe that you lack objectivity. I think you're allowing Dennis Schilling to conduct himself the way he has. It's indicative of a lack of objectivity. I think the conduct of Mr. Schilling has been outrageous. It's been abusive. It's caused me harm, and that should never happen. It's happened because you've allowed it to happen. And as far as I'm concerned, no – I can't say what another judge would do; I don't know what another judge would do. But I do know what you would do. And you've done nothing that would be beneficial or helpful for me in this process.
>
>   So I believe that you should step aside. I don't expect you to do so. I think if you would – if you were going to step aside, you would have done so already. So as far as I know, there's nothing further to add, other than what I've just said, that my pleadings speak for themselves.
>
> . . . .
>
>   But what I would like to say is when you said that the record has – that your record has no support for my motion, I would draw your attention that in my motion, I've cited the record as being a cause of concern that there's been no action taken – taken by you on the pending motions to strike and my objections to Mr. Shilling's pleadings.
>
>   So all I could say is, it's impossible for me to believe that there's no – nothing in the record, when I – when my pleadings have cited the record and have cited the concerns. And that's – that's all I have.

BK Doc. 409, Transcript of January 19, 2022 hearing, at 5-6, 19.

---

[24] The Court notes that the accusations quoted in this paragraph were from documents filed after the December 8th Show Cause Order was entered, and after the hearing was held. Thus, Debtor continued her abusive verbal attacks in her filings in spite of this Court having found that it had a duty to stop this conduct. *See* BK Doc. 307.

While the Debtor argued at the January 19 hearing that she believes she has suffered abuse and harassment from Schilling due to this Court's allowance of his behavior, the statements made by the Debtor at the hearing (and in other hearings in which she has participated) pale when compared to the allegations that she has made on paper.[25] Thus, this matter is before the Court primarily based on the documents she has filed containing abusive accusations.

However, there are at least two issues in this case on which the Debtor has provided inconsistent information – the value of the Debtor's house, and the amount of the Debtor's income. Each of these issues may be relevant when the Court takes up whether the Debtor's Chapter 13 plan should be confirmed.[26]

In the Debtor's original schedules filed with her bankruptcy petition she lists the value of her home as $96,000 on Schedule A/B, but on Schedule D she indicates that the home, subject to a mortgage in the amount of $82,716, has a value of $0. BK Doc. 1, at 10, 19. Interestingly, a note on Schedule A/B regarding the real estate reflects "Very Poor Condition – Needs major repairs such as roof, electrical, plumbing and rain damaged insallation and dry wall with with mold.

---

[25] Debtor has experience in bankruptcy; this is her fourth bankruptcy case. She filed a chapter 7 in 1985 in the Northern District of Georgia and received a discharge. She filed two cases in the Eastern District of Arkansas, both were chapter 7 cases; the case filed in 1997 was dismissed, but she received a discharge in her 1998 case.

There are similarities between the Debtor's behavior and conduct in the 1998 case and her behavior and conduct in her bankruptcy case before this Court. *See In re Haney*, 241 B.R. 430 (Bankr. E.D. Ark 1999). She apparently made accusations and allegations against attorneys and the judge in that case, as she has done in this case. *See id.* at 432. Also, the Debtor apparently filed multiple motions to dismiss; it was the Debtor's "Fourth Amended Motion to Withdraw Chapter 7 Bankruptcy Petition and Combined Notice to Creditors" that was denied in that case. *Id.* at 433. The court in that case noted the Debtor's "demeanor was not consistent with truthfulness. Indeed, her demeanor altered constantly – from coy to tears – in transparent attempts to manipulate the Court and the conduct of the hearing." *Id.* at 433.

The Debtor made a similar attempt during the January 19 hearing. The Debtor remarked that "I mean, my finances were mismanaged. And as I've gotten older, I've not done as well at doing that as I should. It's been hard to make a decision to leave the house that I've – I've loved so." BK Doc. 409, at 12. It is not reflected in the transcript of the hearing but at this point the Debtor's voice broke and, based on this Court's experience in observing hundreds of debtors speak before this Court, the Debtor's voice sounded as if she were about to cry. The next time the Debtor spoke, less than thirty seconds later, her voice had returned to normal.

[26] The value of the Debtor's home may not be compelling regarding confirmation if she continues to propose a plan that pays 100% of the amount owed to her unsecured creditors.

14

Mosture under house and lot is in a floor plan."[27] The Debtor filed amended schedules on September 30, 2021, after she converted her case to Chapter 13. BK Doc. 61. The new Schedule A/B reflects that the value of the property is $135,000 and the portion she owns is valued at $135.000, but Schedule D still shows a value of $0 and a mortgage of $82,414. BK Doc. 61, at 12, 32. Schedules A/B and D were again amended on October 29, 2021. This time Schedule A/B shows a property value of $135,000 and reflects that the value of the portion of the Debtor owns is $52,586.[28] BK Doc. 151, at 1. Schedule D reflects that the real estate mortgage owed is $82,414, secured by collateral valued at $135,000, with an unsecured portion of $52,586.[29] BK Doc. 153, at 1. Schedule A/B was amended once again on December 14, 2021. BK Doc. 321. This time, the value of the property is $135,000 and the value of the portion the Debtor owns is $37,000. BK Doc. 321, at 1. On February 4, 2022, the Debtor filed another amendment to Schedule A/B; the value of the property remained the same at $135,000 but the value of the portion she owns increased a bit to $55,000.[30] BK Doc. 411, at 3.

The Debtor filed a Motion for Leave to Sell Real Estate on January 4, 2022 (BK Doc. 328) proposing to the Court that she be allowed to sell her home for $200,000. It appears from this Motion for Leave to Sell that at the time the Debtor had no actual sale lined up but was instead

---

[27] There are multiple apparent errors in the note, which has been quoted exactly as it appears on Schedule A/B. BK Doc. 1, at 10.

[28] Schedule A/B further shows that the property is owned by the Debtor in fee simple.

[29] It is unclear how the Debtor determined the debt is partially unsecured since the value of the property is greater than the amount of the debt it secures.

[30] Question 1 on Schedule A/B is the section wherein a debtor is to provide information on real property that she "own[s] or [has] any legal or equitable interest in . . . ." A debtor is to specify, among other things, whether anyone else has an interest in the property besides the debtor, and to provide the "[c]urrent value of the entire property" and the "[c]urrent value of the portion you own." The directions specify "[d]o not deduct secured claims or exemptions. Put the amount of any secured claims on Schedule D: Creditors Who Have Claims Secured by Property." In this case, the Debtor has stated that she is the only one with an interest in the property, that the current value of the entire property is $135,000, and the current value of the portion she owns is $55,000 (at least in this version of Schedule A/B). If the house has a value of $135,000, and she is the sole owner, then the value of the portion she owns, without deducting any secured claims or exemptions as the instructions direct, should also be $135,000. If the value of the portion she owns is $55,000, then who owns the remainder?

explaining how she would market the home. The next day Schilling filed a Response to Debtor's Motion to Sell. BK Doc. 330. Schilling asserts that the Debtor's numerous allegations that he had committed fraud on the Court "are baseless, false and merely an attempt to try to gain a litigation advantage by filing false statements" about him. BK Doc. 330, at 1. After pointing out that in the Debtor's original petition the value of her real estate was listed at $96,000, then rose to $135,000 in her amended petitions, and now the Debtor proposes to sell the property for $200,000,[31] Schilling alleges that "[t]he debtor by her own pleading has admitted that she has practiced fraud on this Court in her pleadings that her house was worth $96,000 to $135,000." BK Doc. 330, at 1.

On January 11, 2022, Debtor filed an Amended Motion for Leave to Sell Real Estate in which she indicated she no longer wanted to sell her home at this time. BK Doc. 337. She further stated that, when she was ready to sell the property, she would request approval of the sale. *Id*. In an Order dated January 13, 2022 (BK Doc. 340) this Court denied the Motion for Leave to Sell Real Estate and the Amended Motion for Leave to Sell Real Estate, explaining that the Motions were premature as it appeared she had no actual purchaser lined up and no written contract for the Court to approve or allow. In the same Order the Court deemed Schilling's Response to Debtor's Motion to Sell to be moot since the Motions to Sell were being denied. The same day, the Debtor filed a Motion to Strike Document 330 Pursuant to Rule 12(f).[32] BK Doc. 341. In that motion the Debtor takes aim at both Schilling and this Court:

---

[31] The note referenced on the original Schedule A/B indicates that the house is in "Very Poor Condition." The Debtor does not explain how she arrived at a sales price of $200,000 given that the value of the property, as reported by her, is between $96,000 and $135,000 and is in need of major repairs; in fact, the Debtor proposes that the sale be a cash sale because "[t]he subject property does not qualify as acceptable collateral for a conventional, FHA, VA, or Rural Development mortgage financing due to it's [sic] deteriorated state and condition of the improvements." BK Doc. 328, at 2.

[32] This document is an exemplary illustration of Debtor's conduct. As soon as she becomes aware of any filing that is not what she wants or that is contrary to her position, she strikes back with a vicious filing that is totally unnecessary. This Court does not need this type of filing from Debtor and in fact has ordered the parties not to take such action. Further, her continuing to submit such documents is in violation of this Court's Order Directing the

2. As were all of his other 26-improperly filed pleadings in the Debtor's Chapter 13 bankruptcy case, Schilling's 27th pleading was proffered for purposes of revenge taking against the Debtor.

. . . .

4. Remarkably, in spite of (1) Schilling's unmistakable motive to harm, harass, and take revenge against the Debtor, and (2) his proffering malicious, fraudulent, content, [sic] and (3) his misappropriating the resources of the U.S. Bankruptcy court to exact his revenge, this court has set Schilling's "Response" for a "hearing" on Jan. 19, 2022 at 9:30 a.m.

5. In setting a "hearing" of Schilling's 27th-improperly proffered pleading this court is affording Schilling a public stage upon which to act out his fictional accounts of fraud proffered against the Debtor.

. . . .

7. This court's granting Schilling his third public curtain call whereupon he will take the stage to act out his repulsive, thick-tongued, unhinged, incoherent, harassment and punishment of the Debtor constitutes another incidence of judicial misconduct in a continuing series of questionable actions by Judge Tamara O. Mitchell.

8. Inexplicably, over the course of seventy-nine days beginning on October 21, 2021 and continuing through to the present date, this court has granted Schilling its tacit approval to file his 27-pleadings in the Debtor's Chapter 13 bankruptcy case while refusing to rule on a single one of the Debtor's objections and motions to strike Schilling's improperly filed pleadings.

. . . .

11. Schilling's REPEATED course of unlawful conduct is on full display in this court's record courtesy of Judge Tamara O [sic] Mitchell who had the power to stop him and chose instead to provide him a forum for his misconduct.

. . . .

13. Instead, the Debtor's rights granted to her under the law lie trampled under the feet of Judge Tamara O. Mitchell and Schilling.

BK Doc. 341, at 1-3. On January 13, 2022, the Court entered an Order Denying as Moot the Debtor's Motion to Strike. BK Doc. 342.

The Debtor's reporting of her income has also been inconsistent. On her original Schedule I filed on August 26, 2021, the Debtor claimed to have gross wages of $3,127 per month plus monthly Social Security income of $1,012 for a total of $4,139 per month. BK Doc. 1, at 38-39. Her original Schedule J indicated expenses of $4,139 per month, leaving $0 monthly net income.

---

Debtor and All Parties to Cease Repetitive Filings and Authorizing Enforcement of This Order entered December 8, 2021. BK Doc. 308, AP Doc. 41.

17

*Id.* at 40-41. When she converted her case to Chapter 13, her amended Schedule I filed on September 30, 2021 indicated that her gross income had grown to $5,000 per month, totaling $6,200 with her Social Security income. BK Doc. 61, at 54-55. On Schedule J her monthly expenses decreased to $1,990 for a monthly net income of $4,010. BK Doc. 61, at 56-58. On October 8, 2021, the Debtor again amended Schedules I and J. BK Doc. 67. This time her gross income is reflected as $6,000 per month; when added to her Social Security payments of $1,200 per month her total monthly income is $7,200. BK Doc. 67, at 1-2. As to Schedule J, the Debtor's monthly expenses now total $5,570; after subtracting that amount from her gross income of $7,200 the Debtor has $1,630 in net monthly income. BK Doc. 67, at 5-6. Schedule J contains a note providing:

> My expenses have been estimated to include significant repairs to the house that have not been undertaken but that are critical to continued preservation and habitation of the dwelling. Those repairs are estimated to be at least $50,000. Heretofore, there has been no money to make repairs after all credit card bills were paid. I do not expect my mortgage amount to increase or decrease.

BK Doc. 67, at 6. Schedule I as amended on December 14, 2021, shows a decrease in income to $2,500; added to her Social Security income of $1,028 the Debtor has a gross monthly income of $3,528. BK Doc. 319, at 1-2. The Debtor explains on Schedule J that her "income has decreased due to health issues." BK Doc. 320, at 3. Amended Schedule J further reflects that the Debtor's expenses decreased to $2,290 per month, leaving a net monthly income of $1,238 when expenses are subtracted from her gross income. BK Doc. 320, at 3.

The fact that the Debtor's representations as to the value of her property, her income, and her expenses vary so frequently and to such a great extent it calls the Debtor's credibility into question. In addition, due to the fluctuations in the Debtor's income and expenses it is unclear whether her plan is feasible and whether she will be able to make payments to the Chapter 13

18

Trustee for almost five years in the amount that she must pay in order for her unsecured creditors to be paid in full.[33] Furthermore, the Debtor's inconsistent representations about making her Chapter 13 payments to the Chapter 13 Trustee casts further doubt on her intentions and credibility regarding whether the Debtor is willing and able to make the required payments. On October 25, 2021, the Debtor filed a Notice of Commencement of Payments to Plan (BK Doc. 102) indicating that she would begin payments on November 10, 2021; however, that payment was never received by the Chapter 13 Trustee. At the hearing on November 29, 2021, the Debtor represented that she would make her first payment on that day. Again, the Chapter 13 Trustee never received the payment. During one hearing, the Debtor indicated that she had made a payment but withdrew it since she did not know if she would be allowed to move forward with her case. In spite of the foregoing, according to counsel for the Chapter 13 Trustee at the recent February 7 hearing, the Debtor is now making regular payments to the Trustee.

## CONCLUSIONS OF LAW

Bankruptcy has been long recognized as giving an opportunity for a fresh start to an honest but unfortunate debtor. However, it has recently been stated that "[w]hat [bankruptcy] law does not do, however, is give a debtor . . . unrestrained freedom to run roughshod over the court system . . . ." *In re Jones*, 632 B.R. 138, 141 (Bankr. S.D. Ohio 2021). Judge Hopkins in the *Jones* opinion also noted:

> [W]hen litigants cross the line and their conduct during the litigation becomes abusive, courts cannot remain idle bystanders. Judges are obligated to address that behavior lest the judiciary, our Third Branch of government, risks devolving into just another place where individuals can act out their aggressions and frustrations unbound by respect for the rule of law, common etiquette, and proper decorum. The bankruptcy court, like any federal court, is a forum for peaceful resolution of financial disputes and where mutual respect among parties and attorneys should be exhibited at all times.

---

[33] The Court will address these issues in more depth at the confirmation hearing.

19

*Id.* at 142. A court may issue sanctions under either Bankruptcy Rule 9011[34] or under its own inherent authority.[35] *Jones*, 632 B.R. at 145-46, 148; *see also Bros. of the Wheel MC Exec. Council, Inc. v. Mollohan (In re Mollohan)*, Case No. 21-bk-20130, AP No. 2:21-ap-02007, 2021 WL 5177450 (Bankr. S.D.W. Va. Nov. 3, 2021)).

## **Rule 9011**

According to a leading treatise on bankruptcy:

The purpose of Federal Rule of Bankruptcy Procedure 9011 is to deter baseless filings in bankruptcy court and thus avoid unnecessary judicial effort, the goal being to make proceedings in that court more expeditious and less expensive. The rule permits sanctions to be imposed on persons violating the rule and, it is hoped, will act to deter future conduct of the same nature.

10 Collier on Bankruptcy ¶ 9011.01 (16th 2021). Rule 9011 of the Federal Rules of Bankruptcy Procedure provides in pertinent part:

(a) Signature
Every petition, pleading, written motion, and other paper, except a list, schedule, or statement, or amendments thereto, shall be signed by at least one attorney of record in the attorney's individual name. A party who is not represented by an attorney shall sign all papers. . . .
(b) Representations to the court
By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,
(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

---

[34] All references to Bankruptcy Rules are references to the Federal Rules of Bankruptcy Procedure.
[35] Sanctions may also be assessed under Bankruptcy Code § 105(a) but in light of this Court's conclusions it is unnecessary for it to address § 105(a).

> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.
>
> (c) Sanctions
>
> If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.
>
> > (1) How initiated
> >
> > . . . .
> >
> > > (B) On court's initiative
> > >
> > > On its own initiative, the court may enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney, law firm, or party to show cause why it has not violated subdivision (b) with respect thereto.
> >
> > (2) Nature of sanction; limitations
> >
> > A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. . . . [T]he sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some of all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

Fed. R. Bankr. P. 9011(a)-(b), (c)(1)(B)-(c)(2). *Pro se* debtors are subject to Bankruptcy Rule 9011, including the prohibition against making frivolous arguments. *Jones*, 632 B.R. at 147. *See also In re Graffy*, 233 B.R. 896, 896 (Bankr. M.D. Fla. 1999) (the duties under Rule 9011 for attorneys and *pro se* debtors are the same).

Because Bankruptcy Rule 9011 "is modeled after and substantially identical to" Rule 11 of the Federal Rules of Civil Procedure,[36] cases interpreting Rule 11 may be helpful in cases involving Bankruptcy Rule 9011. *Nicholson v. Wells Fargo Bank, N.A. (In re Nicholson)*, 579 B.R. 640, 649 (Bankr. S.D. Ga. 2017). While Bankruptcy Rule 9011 allows a court to consider sanctions *sua sponte*, the "court must employ . . . a higher standard ('akin to contempt')" than if a

---

[36] All references to Rule 11 are references to Rule 11 of the Federal Rules of Civil Procedure.

party had moved for sanctions.[37] *Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251, 1255 (11th Cir. 2003).

According to the Eleventh Circuit Court of Appeals, sanctions may be assessed:

> (1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when the party files a pleading *in bad faith for an improper purpose.*

*Kaplan*, 331 F.3d at 1255 (quoting *Massengale v. Ray*, 267 F.3d 1298, 1301 (11th Cir. 2001)) (emphasis in original). The Eleventh Circuit Court of Appeals has also explained that "[s]anctions under Bankruptcy Rule 9011 are warranted when (1) the papers are frivolous, legally unreasonable or without factual foundation, or (2) the pleading is filed in bad faith or for an improper purpose. *Glatter v. Mroz (In re Mroz)*, 65 F.3d 1567, 1572 (11th Cir. 1995). Courts use "an objective standard of reasonable inquiry which does not mandate a finding of bad faith" when assessing conduct for purposes of Rule 11 (and thus Bankruptcy Rule 9011). *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 47, 111 S. Ct. 2123, 2134, 115 L. Ed. 2d. 27 (1991). Regarding frivolity, the question is whether "the party's claim is objectively frivolous, in view of the law or facts" such that the party "would have been aware that [a claim] is frivolous if she had conducted a reasonable inquiry"

---

[37] Schilling filed a Motion to Strike and for Sanctions (BK Doc. 170) on November 2, 2021. The Motion was deemed moot in this Court's Order Finding Matters Regarding Dismissal and Conversion to be Moot (BK Doc. 371) entered on January 24, 2022. In that Order this Court explains:

> As the docket sheet in this case reflects, after the Court entered its Order Denying the Recusal Motions, it entered several orders to dispose of dozens of pending matters that were not crucial to Debtor's attempt to confirm a Chapter 13 Plan. This Court seeks to provide Debtor every reasonable opportunity to demonstrate her ability and willingness to pay her creditors and confirm a chapter 13 repayment plan. It further appears to this Court, that it will be helpful to all parties if this Court disposes of many of the dozens of pending matters that were raised but may be either no longer relevant nor applicable or may be litigated at a later date if the case is still pending.

BK Doc. 371, at 5. It is still this Court's intention to give the Debtor every opportunity to continue with her Chapter 13 case, successfully complete her Chapter 13 plan, and get out from under the significant amount of debt that she owes; provided, however, that she complies with the conditions set forth later in this Memorandum Opinion and Order.

into the claim. *Mroz*, 65 F.3d at 1573. "[R]easonableness under the circumstances is used to determine whether the [d]ebtor's conduct violated the 'bad faith/improper purpose' prong of 9011." *In re Graffy*, 233 B.R. 894, 896 (Bankr. M.D. Fla. 1999).

In *In re First City Bancorporation*, the Fifth Circuit Court of Appeals was presented with a case in which the bankruptcy court had awarded sanctions against an attorney where "[h]is attitude and remarks toward opposing attorneys, opposing parties, and the bankruptcy court were – to understate his conduct – obnoxious." 282 F.3d 864, 865 (5th Cir. 2002). Among the numerous offensive statements made by the attorney that were quoted by the lower courts included "various incompetents," "underling who graduated from a 29th-tier law school," and "washed-up has been." *Id.* at 866 (internal citation quotes omitted). The attorney also made reference to another's work as "garbage that demonstrated legal incompetence," and described a court-approved compensation plan as a "bribe." *Id.* (internal citation quotes omitted). The bankruptcy court's award of sanctions[38] was appealed to the district court then remanded back to the bankruptcy court.[39] *Id.* After the bankruptcy court removed the non-monetary sanction and increased the monetary sanction, the district court affirmed on appeal; the attorney then appealed to the Fifth Circuit Court of Appeals. *Id.* at 867. The Court of Appeals noted that the bankruptcy court's sanctions were imposed under Bankruptcy Rule 9011 and the court's inherent power. *Id.* In affirming the sanctions award, the Court of Appeals determined:

> Greenfield defends his comments in two ways. First, he argues that the statements he made were, for the most part, correct. We find this argument utterly meritless. Greenfield was never engaged in stating plain facts -- he was engaged in hurling

---

[38] The sanctions award included a bar from practicing in the bankruptcy court without the court's written permission and a monetary sanction. *Id.* at 866.

[39] Sanctions had been awarded against the attorney in another, unrelated case for "not conducting a reasonable inquiry into the facts before filing a pleading" and the Fifth Circuit Court of Appeals reversed the sanctions award in that case. *Id.* Because of that, the district court remanded to the bankruptcy court the case before it for reconsideration. *Id.* The bankruptcy court removed a bar keeping the attorney from practicing without prior written permission but increased the monetary sanctions against the attorney for filing a motion requesting that all sanctions against him be lifted, causing other counsel to appear and respond. *Id.* at 866-67.

23

gratuitous and hyperbolic insults. Second, Greenfield argues that the actions of both the court and the opposing attorneys caused his abusive conduct. Obviously, any error on the part of the court or motive on the part of opposing attorneys in filing the sanction motion did not give Greenfield carte blanche to launch personal attacks and to defy the court's directive to cease his wholly unprofessional conduct.

*Id.*[40]

The type of sanctions to be imposed is left to the sound discretion of the court. *Trizec Colony Square, Inc. v. Gaslowitz (In re Addon Corp.)*, 231 B.R. 385, 391 (Bankr. N.D. Ga. 1999) (citing *Donaldson v. Clark*, 819 F.2d 1551, 1557 (11th Cir. 1987)). *See also* 10 Collier on Bankruptcy ¶ 9011.06 (16th 2021). When considering whether sanctions should be imposed, and if so, what sanctions are appropriate, the following factors may be considered:

—whether the improper conduct was willful or negligent;
—whether the improper conduct was part of a pattern of activity or an isolated event;
—whether the improper conduct infected the entire pleading or only one particular count or defense;
—whether the person has engaged in similar conduct in other litigation;
—whether the improper conduct was intended to injure;
—the effect the improper conduct had on the litigation process in time or expense;
—whether the responsible person is trained in the law;
—the amount, given the financial resources of the responsible person, that is needed to deter that person from repetition in the same case; and
—the amount needed to deter similar activity by other litigants.

*Id.* (citing 1993 Advisory Committee Note to Fed. R. Civ. P. 11, *reprinted in* 2 Moore's Federal Practice, § 11 App.04 (Matthew Bender 3d ed.)).

Under Rule 9011, this Court must view the conduct of the Debtor and all parties using an objective standard. In this case, the Debtor has so far not appeared in person for any hearings,

---

[40] The attorney further argued that the sanction was "unduly harsh," and should "be chosen to employ 'the least possible power to the end proposed.'" *Id.* (quoting *Spallone v. United States*, 493 U.S. 265, 280, 107 L. Ed. 2d 644, 110 S. Ct. 625 (1990)). Stating that this was "[t]he only cognizable argument" the lawyer made, the Court of Appeals affirmed the award amount because the attorney had been repeatedly warned not to make personal attacks and the attorney failed to respond.

24

despite having had the opportunity. She elected instead to appear by telephone.[41] Because of that, perhaps this Debtor's case is different from other cases cited herein, as this Court's review of the Debtor's conduct is based almost entirely on the documents that she has submitted and have been filed into this Court's CM/ECF system. Regarding the other parties in the case, the Court recognizes that a few of Schilling's filings contained some perhaps too candid and straightforward statements in response to vicious attacks on him by the Debtor's filings.[42] However, once this Court entered its Order on December 8, 2021, Schilling ceased filing any unnecessary filings and he has not filed any repetitious filings. At all hearings, Schilling has conducted himself in an appropriate manner and with restraint.[43] Based on the foregoing, this Memorandum Opinion and Order focuses on the Debtor's conduct in filing documents that include irrelevant and despicable charges against numerous parties. Even after this Court's Show Cause Order was entered on December 8th, and the hearing was held on December 20th, she has continued her relentless attacks within her filings; such attacks constitute an abuse of the court system. Although she is not filing as many documents, the content continues to be inappropriate. The Debtor has consistently and repeatedly made accusations against the Court, Schilling, the Bankruptcy Administrator, the Clerk of the Bankruptcy Court, and others, but she has focused most of charges against the Court and Schilling. Further, the Court notes that the Debtor's filings have been totally and completely

---

[41] As the Court found in its recent Order Denying Motion to Appear Telephonically on February 7, 2022 and February 17, 2022 (BK Doc. 397), the option to appear by telephone is no longer available for this Debtor or any debtors.

[42] Schilling regular practices in this Court, usually as counsel for one of the four of the Chapter 7 trustees in this division of the Court, and he has done so for decades. He is known to file short but direct, straightforward documents that do not soft pedal inappropriate conduct or misstatements in schedules when observed. Based on the substantial experience he has in reviewing schedules and bankruptcy documents, finding irregularities is likely not too difficult for him. And as trustee counsel, he has a duty to call any such irregularities to the attention of the Court, the Bankruptcy Administrator, the trustee and the creditors. And even when, as here, a case is converted and he is no longer trustee counsel, as an officer of the court he has still has duties regarding disclosure of any misconduct he observes.

[43] Presumably as a former law clerk to a United States District Judge, Schilling learned the appropriate courtroom decorum early in his career. Also, based on his experience, he is aware of this Court's expectations that all attorneys shall conduct themselves in a civil and respectful manner.

unsubstantiated. Despite having had the opportunity to appear and substantiate her accusations, she has not provided any evidence or proof of any allegation or accusation contained in the 100 plus documents she has filed so far in this case.

The Court will address the following factors, derived from the 11th Circuit cases and from the list set forth in Collier on Bankruptcy as noted above. Applying the facts of this case to those factors, the Court will determine if sanctions should be imposed and, if so, what the appropriate sanctions would be.

### (1) Do the Debtor's filings have a reasonable factual basis?

As already noted, evidence, or the lack thereof, is an issue in this Debtor's case. Black's Law Dictionary defines proof as "[t]he establishment or refutation of an alleged fact by evidence . . . ." PROOF, Black's Law Dictionary (11th ed. 2019). In turn, evidence is defined as "[s]omething (including testimony, documents, and tangible objects) that tends to prove or disprove the existence of an alleged fact . . . ." EVIDENCE, Black's Law Dictionary (11th ed. 2019). *See also U.S. v. Trainor*, 376 F.3d 1325, 1331 (11th Cir. 2004). "'Evidence' has also been defined to mean any species of proof legally presented at the trial of an issue, by the act of the parties and through the medium of witnesses, records, documents, concrete objects, and the like." *Id.* (quoting 31A C.J.S. Evidence § 3, at 67–68 (1996)). Thus far in this case, the Debtor has failed to present a single shred of proof or evidence of any of the accusations leveled at this Court, Schilling or any other person. This Debtor's filings are little more that rantings of alleged wrongs done to her, but without any evidence or proof, the Court must conclude that her statements are just words, labels and conclusions, and have no basis in fact.

### (2) Are the Debtor's filings "frivolous, legally unreasonable or without factual foundation"?

26

This is a similar analysis. No proof or evidence has been presented regarding any of the allegations in the Debtor's filings. Further, the accusations are more accurately described as in the nature of "they wronged me," without the support of coherently asserted legal theories and without anything to substantiate the charges. As an example, the Debtor has on numerous occasions in her filings alleged that there is "cronyism" between the Court and Schilling. Although the Court cannot be sure what the basis for this accusation is, in her filings she references the fact that this Court and Schilling attended the same seminar sponsored by a state law school. The purpose of any legal seminar is to provide attorneys with continuing legal education, otherwise known as CLE, that term being included in the brochure for the seminar referenced by the Debtor in one of her filings. The particular seminar to which the Debtor has referenced, entitled "Bankruptcy Update," is just what its name implies – an update on recent changes to bankruptcy law and discussions of issues that have been raised and are of interest to those who practice bankruptcy law. Neither this Court, nor any other Judge, could ever attend a CLE if it had to completely avoid being in the same space as attorneys with cases before the Court. Further, virtually all of the Bankruptcy Judges in the State of Alabama, and many of the bankruptcy attorneys, participate in bankruptcy seminars; some are local seminars, some are regional, and some national. It is not "cronyism" for Bankruptcy Judges or attorneys to appear as speakers and presenters at seminars or to attend seminars to stay current on the law. Since the Debtor has represented that she is not an attorney, the Court recognizes that she may not have attended or participated in legal seminars[44] but the Debtor has shown herself capable of research and gathering information. Any reasonable and objective person looking at the participation in CLE seminars by this Court or by Schilling would recognize that such participation is routine, done in all legal fields and clearly was in no way designed as a means of facilitating

---

[44] As a certified real estate appraiser, the Debtor has likely participated in some form of continuing education.

27

"revenge-taking" against this Debtor or any others; thus, the Debtor's allegations have no factual

foundation and are unreasonable.[45]

### (3) Are the Debtor's filings "based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law"?

The Debtor has not introduced, suggested, advanced or shown any viable legal theories

that can be pursued; without proof and evidence, no legal theory can be established. The Debtor

repeatedly challenges and accuses Schilling of wrongdoing based on her premise that he was not

an interested party in her case.  Although she has never articulated any specific reasons for her

claim, it is possible that she is relying on the Application to Employ seeking his employment as

counsel for the Chapter 7 Trustee. In the Application to Employ, he represented that he "is a

disinterested person as that term is defined in § 101(14) of the Bankruptcy Code[.]" BK Doc. 20,

at 1. That Bankruptcy Code section in part defines a disinterested person as one who is not a

creditor or insider of the debtor and does not have a materially adverse interest to the estate or

creditors due to a direct or indirect relationship with the debtor, "or for any other reason." 11

U.S.C. § 101(14). At the time the Application to Employ was filed Schilling's statement was true.

However, by the time the case was converted to a Chapter 13 case, Schilling, who was properly

employed, had performed work for the Chapter 7 Trustee – whether the Debtor agreed with it or

not – and is allowed under the Bankruptcy Code to seek compensation for his work. *See* 11 U.S.C.

§ 330. Thus, he filed an Application for Compensation based on services he performed while the

case was pending as a Chapter 7 and before the conversion. Clearly, Schilling has a pecuniary

interest in this case.[46] Based on the fact that Schilling may have an administrative expense claim,

---

[45] As to most seminars, the agenda, topics, and the speakers are determined months in advance. In this instance, all of these were in place prior to the filing of the Debtor's bankruptcy case.
[46] The Application for Compensation and the Debtor's objection to it are still pending and will be decided when appropriate.

and that he is a defendant in an adversary proceeding brought by the Debtor that is also pending in this Court, he was found to be an interested party.[47]

These are neither complicated nor complex legal theories, and although the Debtor is acting *pro se*,[48] she still has an obligation under Bankruptcy Rule 9011 to ensure that her allegations are not legally unreasonable and that her conduct and accusations are reasonable under the circumstances. Given that she knew Schilling had done work for the trustee while the case was a Chapter 7, and that she had sued him, she should have recognized he had an interest in her case even if she was opposed to it.

Further, much of the language in Debtor's documents is merely mean-spirited and disrespectful, consisting of words and phrases that are inflammatory, but does not include any claims based on statutes, case law, or any other legal basis. Thus, there is no reasonable likelihood that she can establish a recognizable or viable legal claim.

### (4) Are the Debtor's filings "*in bad faith for an improper purpose*"?

It appears that the Debtor's motives are merely to harass, embarrass, anger or bait others in her case; it does not appear that there is any appropriate purpose to her accusations. It appears the Debtor's dissatisfaction in this case began around the time the Chapter 7 Trustee began reviewing the Debtor's Schedules and assets, as he has a legal obligation to do in his capacity as Trustee in order to maximize the distribution to unsecured creditors. *See* 11 U.S.C. § 1704. The Chapter 7 Trustee properly sought the employment of Schilling to investigate the Debtor's assets. *See* 11 U.S.C. § 327. Shortly thereafter, the Debtor first sought dismissal of her case, then she

---

[47] See BK Doc. 357, Order Denying Multiple Motions Filed by Debtor Regarding William Dennis Schilling and Related Motions.
[48] Even though the Debtor is *pro se* she has filed a multitude of documents using "legalese" that, based on this Court's years of experience, *pro se* debtors rarely use. The Debtor has also cited various rules and authorities, such as the Code of Conduct for United States Judges, with which *pro se* debtors are generally not familiar.

withdrew that request and sought a conversion of her case to one under Chapter 13. Even though the Court granted her motion and converted the case to a Chapter 13 as requested, the barrage of pleadings containing vicious accusations and allegations began. The filings were numerous, repetitive, and filled with unsubstantiated charges against the Court, Schilling, the Bankruptcy Administrator, and others.

The Debtor's attacks were personal, maligning the reputation and competence of those involved. It is clear from the Debtor's filings that she does not want Schilling involved in her case and she wanted this Court to recuse. Based on hearings held and the findings made by this Court, it appears that the Debtor sought the removal of the Court and Schilling from her case for reasons known only to her since no evidence has been presented. The Court can only speculate as to the motive behind the Debtor's vicious filings, but the filings are not conducive to confirmation of a Chapter 13 repayment plan which would result in creditors getting paid – the whole point of a Chapter 13 bankruptcy in the first place. The Debtor's venomous accusations and personal attacks have no place in a federal court of law and serve only to stir up anger and distress. For these reasons, this Court finds that the Debtor's documents containing spiteful, unfounded, and unsubstantiated allegations were filed for improper purposes as contemplated by Bankruptcy Rule 9011.

### (5) Has the Debtor "engaged in similar conduct in other litigation"?

This is not the Debtor's first experience with a bankruptcy court; in fact, this is her fourth bankruptcy case. She filed a chapter 7 in 1985 in the Northern District of Georgia and received a discharge. She filed two Chapter 7 cases in the Eastern District of Arkansas; the case filed in 1997 was dismissed, but she received a discharge in her 1998 case. Notably, there are striking similarities between the Debtor's conduct in the 1998 case and her behavior and conduct in this

30

case. *See In re Haney*, 241 B.R. 430 (Bankr. E.D. Ark. 1999). In the Arkansas case, like in this case, she made accusations and allegations against attorneys, and she moved for the judge in that case to recuse. *See id.* at 432. Also, the Debtor apparently filed multiple motions to dismiss; it was the Debtor's "Fourth Amended Motion to Withdraw Chapter 7 Bankruptcy Petition and Combined Notice to Creditors" that was denied in that reported decision. *Id.* at 433. The court in that case noted the Debtor's "demeanor was not consistent with truthfulness. Indeed, her demeanor altered constantly – from coy to tears – in transparent attempts to manipulate the Court and the conduct of the hearing." *Id.* at 433. Further, as noted in a document filed by Schilling, this Debtor's litigation strategy includes verbal assaults on opposing parties and judges. *See* BK Doc. 134.

In addition to the published Arkansas bankruptcy case, this Debtor has displayed similar conduct in the state court where she accused at least a half-dozen other judges of wrongful conduct.[49] While some might suggest that this Court take solace in the fact that the vicious accusations against this Court are not unique, and in fact are consistent with this Debtor's litigation routine, such conduct is unacceptable, reprehensible and absolutely will not be tolerated by this Court. This Court is including this factor in its analysis because it is very applicable. This Court cannot imagine how this Debtor thinks her abusive language is acceptable in court documents or how she thinks this strategy of verbal abuse would help her obtain a favorable ruling. This Debtor should not be permitted to get the benefit of an automatic stay; i.e., a total shield from all collection activity on her substantial debt, while she submits documents that are offensive to any reasonable,

---

[49] In a document recently filed on June 7, 2021, in the Jefferson County Circuit Court in unrelated litigation, the Debtor alleged that a Jefferson County Circuit Judge's "conduct was unhinged, enraged, and constituted judicial misconduct." She accused a different Jefferson County Circuit Judge of having "allowed ongoing unlawful conduct on the part of [an attorney] to undermine my right of due process and has chosen to lie in his ruling stating that he saw no misconduct." And as to yet another Jefferson County Circuit Judge, she stated that the Judge "is a wholly repugnant individual, devoid of any sense of civility, decency, manners, and/or propriety in the manner in which she conducts herself, which is similar to that of a nasty street thug" and further asserts the Judge "intended to harass and intimidate me as a litigant." Two additional Judges were similarly verbally attacked in the same filing. BK Doc. 134, Ex. A.

objective person. The Debtor's inappropriate filings in this case are similar to what she has filed in other courts.

**(6) The impact of the Debtor's conduct on the case generally, the Court, and the other parties in the case.**

The impact of this case has been the waste of time of the other parties, as well as a waste of judicial resources, and it is unclear what the Debtor hopes to gain from her conduct. One apparent source of the Debtor's accusations against this Court and Schilling lies with her perceived refusal of this Court to rule on her various motions and objections as well as this Court's failure to stop the "abuse" that she has reportedly experienced due to Schilling's presence in her case. This Court has explained in other orders but will explain again that the Debtor's motions for this Court to recuse needed to be addressed before the Court moved on to other issues. If recusal had been appropriate then there would have been no need for this Court to rule on the multiple filings made by this Debtor; therefore, some matters were put on hold. Thus, due to the Debtor's own unfounded accusations, matters were held until the recusal issue could be resolved, preventing time and resources from being expended when the Debtor was either unable, or unwilling, to appear and prove any accusations.

Additional time and resources have been spent reviewing the hundreds of filings, many of which are repetitive and "renewed" filings. It is the practice of this Court to thoroughly review and carefully consider all motions, objections, complaints, and other documents before it. Some matters may be disposed of quickly, and others take more time for the Court to research and reach a conclusion. The Debtor seems to expect that every document that she files will receive an instant response from this Court, but such expectation is impractical, and rather impossible to meet.[50] The

---

[50] The Debtor has frequently accused this Court of refusing to rule on her motions. As to everything that appeared to be time-sensitive, this Court has set a hearing and ruled quickly. For example, the Debtor's Motion for Leave to

Debtor's numerous accusations that this Court is biased, prejudiced, and unfit for the bench, appear to have been made in part on the Debtor's perceived failure of the Court to rule on issues in her case. These accusations have resulted in delays, wasted resources and unnecessary hearings. Further, The Debtor's filings have resulted in likely hundreds of hearing notices having been sent via the Bankruptcy Noticing Center,[51] only for the Debtor to fail to appear in person and present any evidence of her allegations. Thus, Debtor's conduct has resulted in a significant and negative impact on her case and on all involved in her case.

Under Rule 9011, this Court must view the conduct of the Debtor using an objective standard. This Court has incorporated into its analysis the relevant factors established by the 11th Circuit Court of Appeals. Based on the foregoing analysis, the Court finds that the Debtor's filings have been objectively frivolous, without factual foundation, and unreasonable under the

---

Sell Real Estate Located at 7220 Rowan Road, Jefferson County, Leeds, AL 35094 was filed January 4, 2022, and set for hearing with the other matters in this case on January 19, 2022. However, on January 11, 2022, the Debtor filed an Amended Motion for Leave to Sell Real Estate informing the Court that she had decided not to sell her home. This Court's Order was entered January 13, 2022, denying the Motion for Leave to Sell and the Amended Motion for Leave to Sell based on the Debtor's failure to attach the pertinent details regarding the proposed sale.

   This Court holds dockets on a regular schedule and generally sets motions and objections for hearing during those dockets. Upon occasion, when warranted, this Court will specially set matters for a hearing outside of its usual dockets, such as the matters heard in this case on December 20, 2021, and January 19, 2022. When the Debtor argues that the Court has refused to rule on her motions and other filings, she fails to take into account that the Bankruptcy Rules require that many motions or other filings be set for hearing with a certain amount of notice time given to parties in interest. *See, e.g.,* Bankruptcy Rule 2002. A court may shorten notice time when a matter is time-sensitive (i.e., the Debtor's Motion and Amended Motion for Leave to Sell Real Estate). Furthermore, this Court (as does many others) typically groups together motions or other filings in a case to be heard at the same time. It would be impractical and a waste of judicial resources, as well as a burden on the Trustee and other counsel involved in a case, for the Court to treat every filing made by the Debtor as an emergency filing - especially considering the sheer volume of documents that the Debtor has filed in this case. Judicial resources (as well as the resources of others involved in cases) are best maximized by the Court hearing multiple matters in a case at the same time during regularly scheduled dockets. As an aside, the Court notes that there are thousands of pending cases (and thus thousands of debtors) before this Court at any given time. If every debtor insisted, as does this Debtor, that his or her motions or objections be heard and ruled upon immediately, and the Court gave in to the demands, there would be complete and utter chaos in the courtroom, in chambers, in the Clerk's Office, and in the courthouse generally. Further, the Court reads each and every pleading, motion, objection or other filing that comes before it, fully and carefully considers every issue and, when necessary, prepares a written memorandum opinion setting forth the facts, the law, and the reasoning behind the Court's decision. It should go without saying that where such serious allegations have been alleged against the Court and counsel, a thoroughly prepared written memorandum opinion is necessary.

[51] These notices are sent out at the expense of taypayers.

circumstances. The Debtor's filings and her conduct have negatively impacted this case and the other parties in this case. The Debtor was given opportunities to appear in person and present evidence, i.e., testimony, documents, or tangible objects, but declined to do so, instead requesting and electing to appear by telephone and then relying on her statement that the "pleadings that speak for themselves." The Debtor's numerous motions, objections, and responses are replete with derogatory comments and accusations, but thus far the Debtor has presented to this Court no testimony, records, documents, concrete objects, or anything else to back up the harsh accusations that the Debtor has carelessly and callously thrown around. A reasonable person would have looked further into the focuses of these attacks, and could have, would have, and should have known that the accusations were objectively frivolous with no reasonable factual basis.

To use the words of the bankruptcy court in *First City Bancorporation*, the Debtor's conduct in this bankruptcy case has been "obnoxious." The Debtor has referred to this Court as "a very disturbed and disturbing individual" who "appalling[ly] . . . set her disordered thoughts to paper and filed them inside of a legal proceeding for the world to read." BK Doc. 398, at 3. In her Renewed Motion to Strike Document 330 Pursuant to Rule 12(f), the Debtor's tone toward Schilling is demeaning, sarcastic and insulting when she suggests her skills exceed his regarding property valuation, stating that "[d]etermining 'objective' value is what the Debtor does for a living and has done since 1985 when Schilling was still a wet behind the ears law licensee with less than two years' experience chasing ambulances."[52] BK Doc. 347, at 2. It would take an inordinate

---

[52] There has been a certain amount of back and forth between the Debtor and Schilling, and not all of the words and phrases used by him have been kind either. However, once this Court ordered that repetitious filings were to be stopped, Schilling complied with this Court's order; he did stop, and he softened his tone. The Debtor complied with the Order for a very short time but eventually she resumed filing documents that violated this Court's Order. Further, the Debtor's vitriol continued, if not increased. Eventually the Debtor flagrantly disregarded the Court's Order, filing a "renewed" motion asking for relief that the Court had already denied (as the Debtor acknowledged in her renewed motion). *See* Judith E. Haney's Motion to Strike Document 330 Pursuant to Rule 12(f) (BK Doc. 341), Order Denying as Moot (BK Doc. 342), and Judith E. Haney's Renewed Motion to Strike Document 330 Pursuant to Rule 12(f) (BK Doc. 347)

amount of time for this Court to catalog every demeaning and mean-spirited remark that the Debtor

has made in her filings in this case, but it would only take a random review of just a few of the

Debtor's filings to see several additional examples of the Debtor's conduct. The Debtor has stated

on the record at hearings that she has cited "facts," but like the attorney in *First City*

*Bancorporation*, the Debtor "was never engaged in stating plain facts" but was instead "engaged

in hurling gratuitous and hyperbolic insults." 282 F.3d at 867. According to her own words, the

Debtor represents that she seeks to "expose" the "ongoing abuses" for which the Court and

Schilling are responsible "to ensure that it is stopped and that it never happens again to anyone

else in similar circumstances." BK Doc. 398, at 3.

In a case such as this one, where unkind or, more appropriately, malicious assumptions,

accusations, and indictments have been included in filings repeatedly and carelessly, without any

evidence presented whatsoever, and supported only by the words that the Debtor has put on paper,

the Court must find that the Debtor's allegations have no reasonable factual basis.[53] The Court

further finds that the Debtor's countless motions, objections, and other filings that contain the same

harmful[54] and extreme allegations and conclusions unsupported by evidence are objectively

---

In the Renewed Motion to Strike Document 330 Pursuant to Rule 12(f), filed on January 18, 2022 as the 347th entry in the docket sheet, the Debtor states "[o]n Jan. 5, 2022 William Dennis Schilling (Schilling) proffered his 27th improperly filed pleading in Debtor's Chapter 13 bankruptcy case (Document 330)." BK Doc. 347, at 1. As of this Court's last count on January 12, 2022, the Debtor herself had filed 101 documents (not including documents filed on her behalf when she was represented by counsel). As of February 4, 2022, the total entries in the docket numbered 416. Of course, the Debtor did not personally did not file over 60 documents after January 18, 2022. Many of the entries are administrative entries either regarding service, noticing hearings, or relating to the Debtor's appeals of three of this Court's orders. The Court mentions the number of docket entries only to illustrate the sheer volume of filings in a short amount of time in what should be a straight-forward Chapter 13 case that would normally, after six months, include 40-60 entries at most.

[53] The Debtor's document entitled Affidavit of Disqualification of Judge Tamara O. Mitchell (BK Doc. 325) is not an affidavit as it has not been sworn to by the Debtor "before an officer authorized to administer oaths." AFFIDAVIT, Black's Law Dictionary (11th ed. 2019).

[54] One recurring theme in the Debtor's filings is that she has been harmed, harassed, and denied due process. The Debtor is culpable for the exact same conduct of which she has accused this Court, Schilling, the Chapter 7 Trustee, and various others. This Court, and worse, Schilling, the Bankruptcy Administrator, and the Clerk of the Bankruptcy Court, all have been the targets of the Debtor's ruthless filings. It is unfathomable to this Court how the Debtor could complain about the perceived harm that she claims to be the victim of and improperly subjected to (without

35

frivolous, legally unreasonable, have negatively impacted the case, this Court and all parties involved in the case, have been attempted before by this same Debtor in other courts, and were made for improper purposes. As such, sanctions under Bankruptcy Rule 9011 are appropriate.

**Inherent Power**

"Federal courts are vested with the 'inherent power to control [their] proceedings and the conduct of the parties involved.'" *Cadle Co. of Conn., Inc. v. Benevento (In re Benevento)*, Bankruptcy No. 10-25535-EPK, Adversary No. 11-01011-EPK, 2013 WL 1292671, at *9 (Bankr. S.D. Fla. Mar. 27, 2013) (quoting *Mroz*, 65 F.3d at 1574 (11th Cir. 1995). The Supreme Court has explained:

> It has long been understood that "[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution," powers "which cannot be dispensed with in a Court, because they are necessary to the exercise of all others." *United States v. Hudson*, 7 Cranch 32, 34, 3 L.Ed. 259 (1812); see also *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980) (citing *Hudson*). For this reason, "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Anderson v. Dunn*, 6 Wheat. 204, 227, 5 L.Ed. 242 (1821); *see also Ex parte Robinson*, 19 Wall. 505, 510, 22 L.Ed. 205 (1874). These powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R. Co.*, 370 U.S. 626, 630–631, 82 S.Ct. 1386, 1388–1389, 8 L.Ed.2d 734 (1962).

*Chambers*, 501 U.S. at 43, 111 S. Ct. at 2132, 115 L. Ed. 2d 27 (upholding lower court's imposition of sanctions in the form of the opposing party's attorney's fees and expenses for bad faith conduct).

The court's inherent power includes the power to impose sanctions that is separate from their authority under Bankruptcy Rule 9011. S*ee* 10 Collier on Bankruptcy ¶ 9011.15 (16th ed.). "[I]nherent power 'is both broader and narrower than other means of imposing sanctions[,] . . .

---

any evidence of the same) yet apparently has no qualms about targeting and inflicting harm on others. This is a case where adherence to the "golden rule" – do unto others as you would have them do unto you – fell by the wayside.

extend[ing] to a full range of litigation abuses . . . ." *Peer v. Lewis*, 606 F.3d 1306, 1314 (11th Cir. 2010) (quoting *Chambers*, 501 U.S. at 47, 111 S. Ct. at 2134, 115 L. Ed. 2d 27. Thus, conduct may be sanctionable under a court's inherent powers if it is not sanctionable under Bankruptcy Rule 9011, or even if it is. *In re Evergreen Sec. Ltd.*, 384 B.R. 882, 931 (Bankr. M.D. Fla. 2008); *see also Chambers*, 501 U.S. at 49, 111 S. Ct. at 2135, 115 L. Ed. 2d ("[T]he inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct.").

The Eleventh Circuit Court of Appeals has determined that "[t]he key to unlocking a court's inherent power is a finding of bad faith." *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998) (citing *Glatter v. Mroz (In re Mroz)*, 65 F.3d 1567, 1575 (11th Cir. 1995)).

> "A finding of bad faith is warranted where an attorney [or a client] knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." . . . *Byrne*, 261 F.3d at 1121 (citations omitted). Sanctions are "especially appropriate where counsel takes frivolous legal positions supported by scandalous accusations." [*Amlong & Amlong, P.A. v. Denny's, Inc.* 500 F.3d 1230 (11th Cir. 2007)]. . . . The seriousness of the allegations combined with the lack of any evidentiary support or minimal investigation support a finding of bad faith.

*Gwynn v. Walker (In re Walker)*, 532 F.3d 1304, 1309-10 (11th Cir. 2008) (first alteration in original). In *Walker*, the district court upheld the bankruptcy court's use of its inherent powers[55] to award sanctions against a creditor's attorney who, in bad faith, filed a motion containing "serious and unfounded allegations of misconduct" against the debtor's attorney. *Id.* at 1310. The creditor's attorney's allegations including that debtor's counsel made false misrepresentations, committed fraud against the court, and planned to personally benefit at the creditors' expense. *Id.*

---

[55] Although the bankruptcy court awarded sanctions under 28 U.S.C. §§ 105, 1927, and its inherent authority, the district court did not discuss 28 U.S.C. §§ 105 and 1927 because sanctions pursuant to the court's inherent power were appropriate. *Walker*, 532 B.R. at 1309.

37

The district court concluded that "[t]he seriousness of the allegations combined with the lack of evidentiary support or minimal investigation support a finding of bad faith." *Id.*

In *Kindig v. Whole Foods Market Group, Inc.*, a district court used its inherent powers to sanction a plaintiff by *sua sponte* dismissing her case with prejudice. *Kindig v. Whole Foods Mkt. Grp.*, 971 F. Supp. 2d 37, 46-47 (D.D.C.). The court began its opinion by summarizing the events that occurred during a "routine slip and fall case":

> Plaintiff elected to proceed pro se after dismissing her attorney accusing him of fraud, utilized a variety of delaying tactics, repeatedly used abusive and invective language in virtually every one of her filed pleadings and oral presentations in the Courtroom and during telephone status hearings, and made a number of serious allegations against Whole Foods and its counsel that were not proven. Plaintiff has made allegations of bias and prejudice and violations of the judicial rules of conduct against three judges, a U.S. District Court Judge, and two U.S. Magistrate Judges, who have presided over this case. . . . Throughout this litigation, Plaintiff treated her former attorney, the Defendant, and Defendant's counsel, with an utter lack of respect and decorum. . . . [T]he undersigned held a show cause hearing for Plaintiff to demonstrate why this case should not be dismissed because of her affirmative misrepresentations about her attorney-client relationship with two attorneys and for her other failures to comply with the Court's orders.

*Kindig*, 971 F. Supp. 2d at 39-40.[56] In addition, among many other things, the plaintiff accused her former counsel of a "cozy relationship" with counsel for the defense, refused to have an independent medical exam after bringing up health issues, moved for a judge to recuse herself for "extreme bias and prejudice," accused the defendant of "bombarding" her with "irrelevant and useless paper for the purpose of harassment," claimed the defendant's "sadistic harassment" led to two visits to the emergency room, claimed the severity of the defendant's "badgering and harassment" during a deposition caused her to faint, and "allege[d] mass ethical violations by [the defendant] and the judiciary." *Id.* at 40-43. The plaintiff complained there were two sets of laws –

---

[56] The plaintiff's actions also included filing motions for sanctions for minor disputes and showing interest in mediation but refusing the assistance of a pro bono attorney although required by the local rules. Further, two separate trial settings were cancelled; one due to the plaintiff's sudden, unexplained illness and the other when she represented that she had gotten counsel. *Kendig*, 971 F. Supp. 2d at 39.

38

one for powerful corporations and another for "the hapless, victimized litigant," and accused the court of "consistently and systematically . . . destroying Plaintiff's case" and of issuing an opinion "replete with false statements; off-the-wall statements and statements at total variance with the facts." *Id.* at 43-44.[57]

According to *Kendig*, dismissal of a case may be used to sanction conduct where the other party has been severely hampered in presenting its case, where the judicial system has been prejudiced when the misconduct has imposed an "'intolerable burden'" on the court, and thus [t]he Court may use its 'inherent power' in order to 'protect [its] integrity and prevent abuses of the judicial process;'" and where "the Court may take into account the need 'to sanction conduct that is disrespectful to the court and to deter similar misconduct in the future.'" *Id.* at 47 (first citing *Webb v. D.C.*, 146 F.3d 964, 971 (D.C. Cir. 1998), then quoting *Shepherd v. Am. Broad. Co., Inc.*, 62 F.3d 1469, 1474 (D.C. Cir. 1995)). The court found that the defendant had been prejudiced by the plaintiff's actions in that the defendant was financially burdened, made to waste time and effort, and had its integrity maligned (for example, by the plaintiff stating that the CEO's behavior "'borders on pathological behavior.'"). *Kindig*, 971 F. Supp. 2d at 47-48. Further, the court found that the plaintiff burdened the judiciary as three judges were unable to move the case forward, three judges were subject to motions to recuse containing "serious unfounded allegations of bias and violations of the Judicial Code of Conduct," orders of the court were ignored by the plaintiff including her "attempt[s] to relitigate issues upon which the Court has ruled," and the plaintiff twice caused trials to be cancelled after the court had cleared its docket. In addition, the court found sanctions were warranted by the plaintiff's disrespectful actions:

---

[57] The *Kindig* opinion set out additional examples of the plaintiff's behavior and accusations that ultimately led to the sanctions award, but the examples identified in this Memorandum Opinion and Order are sufficient to allow the reader to draw parallels between that case and the one before this Court.

> [The plaintiff], in most of her pleadings and in the Court hearings and telephone status hearings, consistently used invective language, made unfounded accusations, and threatened the initiation of disciplinary proceedings against all participants in this case, including the three judges, opposing counsel, Plaintiff's former counsel, and [the defendant] itself. The language used by [the plaintiff] in her pleadings and in the Courtroom is unlike any other that this Court has seen or heard, by either an attorney or a pro se party. Through repeated use of the words "sadistic," "fiendish," "vicious," "brutal," "harassment," "threats," and "fraud," [the plaintiff] demonstrated an utter disregard for the civility of the Courtroom process and the courtesy with which opposing parties should treat each other. Her actions were disrespectful to the Court and to the opposing party.

*Kindig*, 971 F. Supp. 2d at 47-48. In sanctioning the plaintiff under its inherent power, the court did not specifically find that the plaintiff acted in bad faith; however, the court's description of the plaintiff's conduct warranting dismissal is very similar to what the Eleventh Circuit Court of Appeals identified as bad faith in *Walker*.

Although this Court has determined that the Debtor is due to be sanctioned under Bankruptcy Rule 9011, the Court finds it appropriate to discuss whether sanctions should be issued pursuant to its inherent power. The Debtor has made countless, serious, allegations about the competence, integrity, professionalism, and ethics of participants in this case, particularly regarding the Court and Schilling, and her behavior has been nothing short of relentless harassment. The Debtor has been given opportunities to present any testimony or other evidence that she may have to support her allegations. The Court notified the Debtor in its Show Cause Order and in various telephonic hearings that any testimony or other evidence that she wished to present had to be given in person, and yet the Debtor has thus far declined to attend in person. Her only argument to the Court was that the pleadings speak for themselves. She is right. There are hundreds of pages in this less-than-six-months-old bankruptcy case that are full of unsupported allegations and vicious attacks. This Debtor has inappropriately misused this Court's CM/ECF filing system to unleash her "aggressions and frustrations," *Jones*, 632 B.R. at 141, and it has been

40

established herein that this is her pattern and strategy in litigation. Rather than prove facts and establish legal theories, she uses documents to attack anyone and everyone involved. This Court will not permit the continuation of this conduct – it will exercise its inherent power to stop it. If the Debtor complies with this Memorandum Opinion and Order, and all other Orders of this Court (whether issued prior to or subsequent to this Memorandum Opinion and Order), then she will be allowed to proceed with her case and hopefully pull herself out of the financial hole she is in. If she is either unable or unwilling to comply with this Court's orders, then she will not be permitted the continued opportunity to spew her venom using this Court and its CM/ECF system as a weapon.

This Debtor's actions are akin to the plaintiff in *Kindig*. The Debtor has accused this Court of "cronyism," moved for recusal of this Court alleging bias and failure to perform the duties of its office, claimed multiple ethics violations by this Court and Schilling, and accused the Court and Schilling of harassment and "revenge taking" while she herself battered the Court and Schilling with brutal and malicious allegations. She has claimed that this Court is a "disturbed and disturbing individual . . . [who] appalling[ly] set her disordered thoughts to paper and filed them inside of a legal proceeding for the world to read." BK Doc. 398. Schilling, the Chapter 7 Trustee, and others involved in this case have been forced to spend time and money defending against the numerous allegations that have come from the Debtor at a fast and furious pace. The Court has spent disproportionate amounts of time and resources considering repetitious motions, objections and other documents, and in some cases, dealing again with issues upon which the Court has already ruled; the fact that Debtor continues to file repetitive motions, supplements, and other documents despite this Court's December 8, 2021 Order directing that the parties cease such filings particularly evidences the bad faith in which the Debtor has conducted herself in this case. The

41

Debtor's bad faith as established herein warrants the imposition of sanctions under this Court's inherent powers. Like the plaintiff in *Kindig*, this Debtor's behavior has been so extreme that anything less than dismissal of the case with a lengthy, but appropriate, bar against filing another bankruptcy case is the only sanction that could possibly deter the Debtor from conducting herself in this manner again.

This Court has always been, and will always be, willing to deal with whatever issues come before it and do so in a careful, diligent manner, but there comes a time when this Court must put an end to behavior that is disruptive, scandalous, harmful, abusive and totally unnecessary. Proper decorum, respect for others, civility, courtesy, and basic good manners have always been demanded and required of all who have appeared and practiced before this Court. The standard is the same for *pro se* debtors and parties[58] and extends to filings by anyone. There will not be an exception for this Debtor, or anyone; all will be held to the same standard.

The purpose of this bankruptcy case is, or at least should be, for the Debtor to confirm a plan that will allow her to pay her creditors (she has approximately $74,000 in unsecured debt, mostly credit card debt, and approximately $20,000 in taxes due to the Internal Revenue Service)[59] and obtain the fresh start that is available to honest but unfortunate debtors.

Although the Court has determined that sanctions are appropriate under both Bankruptcy Rule 9011 and the Court's inherent powers, the Court deems it appropriate to refrain from dismissing this case without giving the Debtor an opportunity to make this case work. However,

---

[58] This Court has on numerous occasions advised *pro se* debtors or parties that this is not court television; we do not interrupt each other, and we do not talk over one another. This Court enforces a similar standard in filings and on the few occasions a filed document has been "too much" or offensive, the Court has advised the filer to "tone it down" and be civil.

[59] The Debtor's amended schedules and plan just filed February 4, 2022, reflect a debt to the Internal Revenue Service (the "IRS"). A proof of claim has not yet been filed. In a previous bankruptcy case, it appeared that the Debtor had failed to file tax returns for recent years. In this case, until the IRS files its claim, there may be some question as to whether returns have been timely filed. See *In re Haney*, 238 B.R. 432, 435 (Bankr. E.D. Ark. 1999).

the case shall proceed in a civilized, respectful, courteous, and business-like manner, and the Debtor shall comply with the conditions set out below or this Court may impose the appropriate sanctions including, but not limited to, dismissing this case with a bar against refiling for a lengthy but appropriate period of time. The determination of whether the Debtor has complied with or violated any provision of this Order and/or any prior or subsequent Order of this Court is within the sole discretion of this Court.

Based on the foregoing findings and conclusions, it is hereby **ORDERED, ADJUDGED and DECREED** that, as long as this case remains pending, any pleading, paper, document, or other filing must follow and comply with the following guidelines:

1) The document shall not contain unsupported allegations or accusations, i.e., every document shall include within the document, or attached to the document, some evidence or proof of the allegations asserted;

2) The document shall not duplicate or repeat any documents already filed in this case or proceeding and shall not contain any allegations that duplicate or repeat allegations contained in a previously filed document, whether or not such document has been ruled on;

3) The document shall not be vicious, malicious, vexatious or mean-spirited as those terms are viewed and perceived by a reasonable person;

4) The document shall only be filed if there is a legitimate need or purpose for the filing and shall not be filed for the purpose of harassment, embarrassment, or other inappropriate purpose;

5) All documents filed must be consistent with allowed procedures. The Debtor has been advised that she may file documents in person or via U.S. Mail, but

she may not email documents to the court for filing; the Debtor shall comply

with the allowed procedure and not attempt to circumvent the procedure;

6) The Debtor shall refrain from attempting to correspond with individual

members of the Clerk's office, as she has been advised that this is not

acceptable. BK Doc. 257, at 4.

It is further **ORDERED** that while this case is pending the Debtor shall:

1) appear at in-person hearings as required[60] including, but not limited to, any

and all[61] hearings set relating to confirmation of the Debtor's Chapter 13

plan;[62]

2) make full plan payments each and every month as required by the

Bankruptcy Code and Bankruptcy Rules, and as determined by her plan

and/or confirmation order;

3) comply with all duties and responsibilities of a Chapter 13 Debtor.

---

[60] Based on the Debtor's conduct and requests in this case, this Court anticipates that the Debtor will continue to seek special treatment to avoid appearing in person at hearings based on representations regarding her health. As previously stated in its Notice and Order Setting Confirmation Hearing:

> The Court notes that thousands of Debtors have pending cases and that as of January 1, 2022, the Debtors have resumed attending in-person hearings, many of the Debtors are senior citizens, many with health issues, but nevertheless, they appear in person as required in support of their cases. This Debtor will not be treated differently, she will not be given special treatment or privileges and she will be required henceforth to appear at all in-person hearings in person and will not be permitted to appear telephonically.

*See* Notice and Order Setting Confirmation Hearing, Doc. 353 n.2. If the Debtor cannot or will not come to in-person hearings, the Court will have no choice – the Debtor's Chapter 13 case will not proceed. This Court can only help the Debtor via this Chapter 13 if the Debtor cooperates and abides by the same procedures and requirements as all other debtors before this Court.

[61] It is not unusual in a Chapter 13 case for the Court to have a confirmation hearing reset for issues to be resolved.

[62] A confirmation hearing is scheduled for February 17, 2022, on a regularly scheduled confirmation docket. It appears that there are likely some remaining obstacles to confirmation of the Debtor's plan based on the objections that are also set for the same day and time. Also, as previously noted, the IRS has been just recently added as a creditor and may not have yet filed its claim, which could delay confirmation. However, this Court intends to hold the hearing as scheduled so that some of the many matters also set for that day may be resolved.

It is further **ORDERED** that, as previously stated, if the Debtor violates the terms of this Order or any other Order of this Court, previously entered or subsequently entered, or if the case is due to be dismissed or converted based on a payment default, then the court in its discretion may determine the appropriate action to be taken based on the Court's familiarity with the case, the Debtor's default, and the time of the default. Such action may include dismissal and a prohibition from refiling another bankruptcy case under any chapter for an appropriate period of time, or conversion of the case to Chapter 7. The Court, using its discretion, may decide whether notice and a hearing are necessary, or the Court may take such action without notice and without a hearing. Further, if at any time the Debtor seeks dismissal of this case, the Court may rule on such motion without notice or hearing and may convert the case back to a Chapter 7 or may dismiss the case and prohibit the Debtor from refiling another bankruptcy case under any chapter for an appropriate period of time.[63]

Dated: February 10, 2022

/s/ Tamara O. Mitchell
TAMARA O. MITCHELL
United States Bankruptcy Judge

TOM/dgm

---

[63] If the Debtor's documents continue to be abusive or if she otherwise violates the conditions set out herein, and this Court determines it must impose sanctions to protect the sanctity of the federal bankruptcy court, a dismissal with a bar against refiling would include the entire Northern District of Alabama, and such dismissal order would also instruct the Clerk's Office to refuse filings from this debtor once barred.