**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **In Re:** | ) | |
| | ) | |
| **JUDITH E. HANEY** | ) | **Case No. 21-02007-TOM-13** |
| | ) | |
| **Debtor.** | ) | |

_____

<u>**MEMORANDUM OPINION AND ORDER
ON FINAL APPLICATION FOR COMPENSATION AND EXPENSES**</u>

This case came before the Court for hearing on April 28, 2022, on the "Final Application for Compensation and Expenses" (Doc. 81, the "Fee Application") filed by William Dennis Schilling; "Debtor's Objection to Trustee's Fees Filed by Dennis Schilling (Document 81)" (Doc. 104, the "Original Objection") filed by Judith E. Haney; "Response to Debtor's Objection to Trustee Counsel's Fees" (Doc. 108, the "Response") filed by William Dennis Schilling; "Debtor's Renewed Objection to Payment of William Dennis Schilling's Attorney's Fees" (Doc. 248, the "Renewed Objection") filed by Judith E. Haney; and "Debtor's Supplement to Objection to Payment of Invoice (Document 81)" (Doc. 492, the "Supplement to Objection") filed by Judith E. Haney (the Original Objection, the Renewed Objection, and the Supplement to Objection, collectively, the "Fee Objections"). In addition, the "Debtor's Summary of Objections to Payment of William Dennis Schilling's Professional Fees (Doc. 81)" (Doc. 548) was filed by Judith E. Haney on the morning of the hearing.

Appearing before the Court were Judith E. Haney, the Debtor;[1] William Dennis Schilling ("Schilling") for himself;[2] Richard M. Blythe as attorney for J. Thomas Corbett, Bankruptcy

---

[1] The Debtor is appearing *pro se*.
[2] This case was originally filed as a Chapter 7 case. The Chapter 7 Trustee's application seeking to employ Schilling as his counsel (Doc. 20) was approved by this Court's Order (Doc. 47) shortly after the case was filed

Administrator; Rachel L. Webber, attorney for J. Thomas Corbett in his individual capacity; Joseph E. Stott, attorney for Andre M. Toffel, former Chapter 7 Trustee, in his individual capacity; and Mary Frances Fallow, attorney for the Chapter 13 Trustee. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 151, and 157(a) and the District Court's General Order of Reference Dated July 16, 1984, as Amended July 17, 1984.[3] This is a core proceeding arising under Title 11 of the United States Code as defined in 28 U.S.C. § 157(b)(2)(A) and (O).[4] The Court has considered all of the pleadings, the testimony, the exhibits, the arguments, and the law, and finds and concludes as follows.[5] The Court adopts all of the findings and conclusions from all of its prior orders entered thus far in the bankruptcy case and in the adversary proceeding.

### **FINDINGS OF FACT**[6]

The Debtor filed her bankruptcy case, originally under Chapter 7, on August 26, 2021.[7] Andre Toffel was added to the Debtor's case as Chapter 7 Trustee on September 7, 2021, and his Application for Approval of Employment of Professional Person (the "Employment Application")

---

[3] The General Order of Reference Dated July 16, 1984, As Amended July 17, 1984 issued by the United States District Court for the Northern District of Alabama provides:

> The general order of reference entered July 16, 1984 is hereby amended to add that there be hereby referred to the Bankruptcy Judges for this district all cases, and matters and proceedings in cases, under the Bankruptcy Act.

[4] 28 U.S.C. §157(b)(2)(G) provides as follows:

> (b)(2) Core proceedings include, but are not limited to–
> (A) matters concerning the administration of the estate;
> . . . .
> (O) other proceedings affecting the liquidation of the assets of the estate or the debtor-creditor or the equity security holder relationship . . . [.]

[5] This Memorandum Opinion and Order constitutes findings of facts and conclusions of law pursuant to Federal Rule of Civil Procedure 52, applicable to contested matters in bankruptcy pursuant to Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Bankruptcy Procedure 9014.

[6] Pursuant to Rule 201 of the Federal Rules of Evidence, the Court may take judicial notice of the contents of its own files. *See ITT Rayonier, Inc. v. U.S.*, 651 F.2d 343 (5th Cir. 1981); *Florida v. Charley Toppino & Sons, Inc.*, 514 F.2d 700, 704 (5th Cir. 1975).

[7] The bankruptcy case was first assigned to Bankruptcy Judge D. Sims Crawford and Chapter 7 Trustee James G. Henderson. On September 7, 2021, James G. Henderson rejected his appointment as Chapter 7 Trustee and Andre M. Toffel was appointed as the new Chapter 7 Trustee. On September 8, 2021, the Debtor's bankruptcy case was reassigned for cause from Judge Crawford to this Court.

2

seeking to employ Schilling as "attorney for Trustee" was filed on September 8, 2021. Doc. 20.

On the same day Schilling filed a Notice of Appearance and Request for Service. Doc. 21. Of

particular importance to the Fee Application and Fee Objections, the Employment Application

contains the following language:

> 3.    The specific facts showing the necessity for the employment here requested are as follows:
>
> **Complicated case involving analysis of potential causes of action, decision as to whether to file adversary proceeding and if so to prosecute same as well as various other analysis and assistance for which legal assistance is required.**
>
> . . . .
>
> 8.    . . . .
> Allowance for expenses (if any):
>
> **To be reimbursed after court approval**
>
> Hourly basis for said person and for each other person expected to perform work and to be included in any application for compensation:
>
> **$400.00 per hour for attorney time**
> **$ 90.00 per hour for paralegal time**

Doc. 20, at 2.[8] On September 14, 2021, an Amended Notice and Order Approving Employment of

Attorney (Doc. 37, the "Employment Notice and Order") was entered, providing that the

Employment Application would be deemed approved unless a written objection was filed within

21 days after entry of the Amended Notice and Order. No objections to the Employment Notice

and Order were filed.[9]

_____

[8] The Employment Application and Notice of Appearance and Request for Service were sent to directly to the Debtor's attorney of record at the time. The Debtor's now-former counsel filed a motion seeking to withdraw from his representation of the Debtor (Doc. 14); while that motion was not served directly on the Debtor by the Clerk's Office or the Bankruptcy Noticing Center since she was represented by counsel, attached to the motion is an email from the Debtor to counsel letting him know in no uncertain terms that his services were "hereby terminated effective immediately." Consequently, the Debtor knew or should have known that the attorney was withdrawing from the case. The order granting the motion to withdraw (Doc. 23) was sent directly to the Debtor. *See* Docs. 23, 29.

[9] The Employment Application was sent to Debtor's then-attorney. Attorneys are charged with sending copies of motions and other documents to their clients. However, the Employment Notice and Order was sent directly to the

On September 13, 2021, the Chapter 7 Trustee filed a document entitled Case Status Change (Doc. 30) explaining that the original notice of the meeting of creditors indicated that no assets would be available to pay unsecured creditors; however, since that time, he had "discovered property of the estate which [he] would reduce to cash. After payment of administrative expenses, it appears there will be a distribution to unsecured creditors." Doc. 30, at 1.

Also on September 13, 2021, the Debtor filed a document entitled Withdrawal of Chapter 7 Petition Case No. 21-02007-DSC7 (Doc. 32, the "Withdrawal of Petition") stating she wanted to "withdraw" her bankruptcy petition because she could pay her creditors and wanted to avoid "further harm to her creditors and to herself." Doc. 32, at 1. The Withdrawal of Petition was followed by an Amended Motion to Voluntarily Dismiss Chapter 7 Petition Case No. 21-02007-DSC7 (Doc. 40, the "Amended Motion to Dismiss") on September 14, 2021.

This Court scheduled a telephonic hearing[10] for October 18, 2021 on the Debtor's Withdrawal of Petition and Amended Motion to Dismiss. On September 20, 2021, less than one week after the Amended Motion to Dismiss was filed, the Debtor filed a Withdrawal of Motion to Dismiss Chapter 7 Petition Case No. 21-02007-DSC7 (Doc. 49) and a Motion to Convert Case to Chapter 13 (Doc. 51, the "Motion to Convert"). After a hearing on October 21, 2021, this Court's Order granting the Motion to Convert was entered the same day. Doc. 78.

Also on the same day as the hearing, and after the Order converting the case was entered, Schilling filed his Fee Application requesting $4,000 in compensation and $51.53 in expenses for a total of $4,051.53. Doc. 81. Attached to the Fee Application is a copy of his "pre-bill worksheet"

---

Debtor at her address of record. *See* Doc. 37-1 attached to Doc. 37. Thus, the Debtor would have known about the Employment Application even if the attorney never sent it to her. The Debtor has demonstrated she has access to the Court's PACER system apparently with her own account (she has requested permission more than once to file documents electronically), and it has been this Court's experience that the Debtor has actively monitored this case. The bottom line is that the Debtor had the opportunity to object to the Employment Application but did not do so.
[10] At that time all hearings were being held telephonically due to the pandemic.

detailing his work, time spent, and expenses incurred as counsel for the Chapter 7 Trustee.[11] Per the Fee Application, Schilling first performed work for the Chapter 7 Trustee on September 7, 2021, the day the Chapter 7 Trustee was appointed; the Employment Application was filed one day later. This Court's Amended Notice and Order was entered on September 17, 2021, and on October 25, 2021, the Debtor filed her Original Objection. It is at this point that the bankruptcy case in general took a highly contentious turn.

Obviously, the Debtor's Fee Objections reflect that the Debtor takes issue with Schilling's charges relating to his work for the Chapter 7 Trustee; however, the Fee Objections tell only part of the story. The Debtor filed a considerable number of documents, including motions and objections, and renewed and supplemental versions of motions and objections, when this Court did not rule as quickly as the Debtor wanted or when she was unhappy with the outcome. In just about every document that the Debtor filed, she made hateful and malicious allegations and remarks that called out virtually every person involved in any way in her bankruptcy case.[12] On October 29, 2021, the Debtor filed a state court action against Schilling, the former Chapter 7 Trustee, and a law firm involved in separate state court action brought by the Debtor. The state court case was removed to this Court on November 2, 2021 and designated as Adversary Proceeding No. 21-00045-TOM.[13]

---

[11] Schilling's pre-bill worksheet indicates that he incurred fees and expenses in the total amount of $5,728.53. In his Application for Compensation Schilling requested reduced fees of $4,000, for a total requested fees and expenses in the amount of $4,051.53.

[12] The Debtor has sought numerous times in several ways to remove this Court from her bankruptcy case, alleging bias and lack of impartiality, among other things. This Court has declined to recuse from this case and the Debtor's appeals of those orders have been unsuccessful. On August 11, 2022, the Debtor filed another Motion to Disqualify Judge Tamara O. Mitchell (BK Doc. 571, AP Doc. 45). This Court's Notice and Order on Motion to Disqualify Judge Tamara O. Mitchell was entered on August 12, 2022 (BK Doc. 573, AP Doc. 159).

[13] Schilling soon filed a counterclaim against the Debtor. The adversary proceeding is still pending between the Debtor and Schilling; however, the Chapter 7 Trustee and the law firm were dismissed as defendants on February 10, 2022.

5

Due to the Debtor's continued repetitive, combative pleadings, this Court issued on December 8, 2021 an Order Directing the Debtor and All Parties to Cease Repetitive Filings and Authorizing Enforcement of This Order. (Doc. 306, the "Order to Cease"). In addition to ordering the parties to stop filing repetitive documents the Court cautioned the parties that it could strike or deny relief as to any document violating the Order to Cease. Although the Debtor did abide by the Order to Cease briefly, she eventually resumed filings as before, prompting this Court to issue an Order for a Hearing to Be Scheduled and Noticed for Debtor and Any Party to Show Cause Why the Bankruptcy Case and the Adversary Proceeding Should Not Be Dismissed Immediately. Doc. 307. On February 10, 2022, this Court's lengthy Memorandum Opinion and Order on Notice to Show Cause Why the Bankruptcy Case and the Adversary Proceeding Should Not Be Dismissed (Doc. 423, the "Show Cause Opinion") was entered, revealing the Court's conclusion that sanctions under both Bankruptcy Rule 9011 and the Court's inherent powers were appropriate; however, because the Debtor owed a significant sum to unsecured creditors and needed bankruptcy relief, this Court declined to dismiss the case at that time but cautioned the parties that "the case shall proceed in a civilized, respectful, courteous, and business-like manner," warned against repetitive filings, and directed that filings were "not [to] be vicious, malicious, vexatious or mean-spirited as those terms are viewed and perceived by a reasonable person."[14] Doc. 423, at 43.

This very brief history of the events in this bankruptcy case provides the background helpful for understanding the issues involved in the Fee Application and the Fee Objections

---

[14] Despite this Court's directive in the Show Cause Opinion, the Debtor once again started peppering her filings with unnecessarily hostile accusations of Schilling's "disturbing, bizarre, behavior," "threatening conduct," "childlike rebellion," abuse, and lying, and this Court's "allow[ing] him to continue amidst the shock, disdain, and distraction that his offensive behavior induced." Doc. 553, at 1-2, Motion to Disqualify William Dennis Schilling Pursuant to Canon Nine, ABA Model Rules of Professional Conduct. Some of the Debtor's later filings have been anything but civilized, respectful, courteous, and business-like. However, within the last couple of months or so, the Debtor has refrained from filing the volume of documents that she has in the past. The Court can only speculate that the Debtor may have perhaps slowed her pace because these matters were under submission.

currently before this Court. The Debtor has consistently fought to block any participation by Schilling in her case, especially since the time of conversion, arguing strenuously that Schilling is not an "interested party."[15] As noted, the Debtor has taken aim against almost everyone involved in this case, but her vitriol has been especially concentrated first against Schilling and then against this Court for not prohibiting Schilling from participating in this case. It is not surprising that the Debtor has objected to the entirety of Schilling's requested fee, as is her right to do.[16]

Schilling's Fee Application with the attached pre-bill worksheet reflects that he seeks compensation of $4,000 and expenses of $51.53 as an administrative expense for his work performed for the Chapter 7 Trustee from September 7, 2021 "to conclusion of case." Doc. 81, at 1. The Debtor has particularly expressed opposition to Schilling's charges billed in the days prior to entry of the Court's Employment Notice and Order on September 14, 2021; she asserts those charges are in violation of the Handbook for Chapter 7 Trustees (the "Handbook") published by the U.S. Department of Justice[17] in support of her argument. According to the Debtor, the Handbook forbids work on a Chapter 7 case by a professional until an order approving an application for employment has been entered. To this Court's knowledge, the Debtor never attached copies of the relevant pages of the Handbook to any of her filings, and never offered copies into evidence at any hearing. Other objections the Debtor raises pertain to the way Schilling researched state court cases in person as opposed to online, charges for work performed after she indicated her intent to convert her case to Chapter 13, the amount of time Schilling spent on the

---

[15] In its Order Denying Multiple Motions Filed by Debtor Regarding William Dennis Schilling and Related Motions, this Court determined Schilling to be an interested party. *See* Doc. 357, at 4

[16] The hearing on confirmation of the Debtor's proposed Chapter 13 plan (the "Plan") was held on June 30, 2022. After reminding the parties that the Fee Application and Fee Objections were still under submission and, after confirming with the Chapter 13 Trustee that the Debtor's proposed Plan would work regardless of whether this Court allowed all, some, or none of Schilling's fees, the Court confirmed the Plan. *See* Doc. 569, Confirmation Order.

[17] U.S. Dept. of Justice, *Handbook for Chapter 7 Trustees* (Oct. 1, 2012), https://www.justice.gov/ust/page/file/762521/download).

case, the Court's failure to order a forensic accounting of Schilling's charges, and the Bankruptcy Administrator's failure to respond to her concerns.

Schilling's Fee Application was prepared using the standard format in this Court. In the Fee Application Schilling reveals that he had neither sought nor received fees and expenses previously in the case, and that no further applications for fees would be sought. He asserts "[t]he attorney's fees requested herein were actual, necessary and reasonable in order to preserve and create the Debtor's estate and for the benefit of the creditors of the above estate" then summarizes the work he performed:

a.    Reviewed the petition of the debtor.
b.    Various discussions with the debtor's attorney.
c.    Investigate facts surrounding potential assets of the estate and the workings of the debtor.
d.    Prepare application for compensation in this matter.

Doc. 81, at 3.

The Fee Application and the pre-bill order reflect that Schilling spent time researching potential assets of the estate, especially lawsuits pending in the state court. The Debtor's Schedule A/B reflects that she has three pending lawsuits in which she is the plaintiff (Doc. 1, at 14) while her Statement of Financial Affairs lists four pending lawsuits (Doc. 1, at 45).[18] According to the Debtor the values of the lawsuits are "unknown." Schilling's Fee Application and his testimony reflect he researched pending state court lawsuits in which the Debtor was a party and actually found six in which the Debtor was the plaintiff. Schilling's Fee Application and his testimony also reflect that his research was performed in person in the Jefferson County Courthouse because he does not have an account to perform the research online, and that his expenses included obtaining copies of relevant records.

---

[18] Also listed in the Statement of Financial Affairs is a state court lawsuit in which the Debtor is a defendant. Doc. 1, at 45.

Additionally, the Fee Application indicates that he communicated with the Chapter 7 Trustee, corresponded with the Debtor's former counsel, corresponded with attorneys for defendants in the state court actions, drafted documents and discovery, reviewed the Debtor's filings, corresponded multiple times with the Debtor, and prepared his Fee Application, among other things. Schilling also makes clear in the bill that his long-time paralegal also performed work in the Debtor's case that was included in the bill.[19]

As is required in this Court,[20] Schilling analyzes his services under the factors set forth in *Johnson v. Georgia Highway Express*, 488 F. 2d 714 (5th Cir. 1974) and in *Norman v. Housing Authority of the City of Montgomery*, 836 F. 2d 1292 (11th Cir. 1988). Schilling discloses that he charged his established hourly rate of $400 per hour and explains that although his actual work on the case totaled $5,677 he voluntarily reduced the amount requested in his Fee Application to $4,000 in fees; together with expenses of $51.53, Schilling has requested a total of $4,051.53. The Bankruptcy Administrator is required to review fee applications and he did so in this case. The Bankruptcy Administrator's Statement of Review Regarding the Application for Final Compensation and Reimbursement of Expenses Filed by William Dennis Schilling, Attorney for the Trustee (Doc. 245), filed November 22, 2021, sets forth the criteria in which the Bankruptcy Administrator reviewed the Fee Application and states that he has no objection to the Fee Application.

At the hearing on the Fee Application and the Fee Objections, Schilling introduced into evidence several exhibits as well as his testimony in support of his Fee Application. The Debtor

---

[19] The pre-bill worksheet reflects that Schilling's paralegal's billing rate is $90 per hour. According to this Court's tabulation of the time spent and amount charged as reflected in the pre-bill worksheet, Schilling's paralegal spent 1.3 hours on this case for a total of $117 billed.

[20] Compensation for Professionals is addressed in Local Rule 2016-1, found at https://www.alnb.uscourts.gov/content/rule-2016-1-compensation-professionals.

did not present any witnesses, exhibits, or other evidence at the hearing to support her Fee Objections other than her own testimony.

**CONCLUSIONS OF LAW**

**A.    The Debtor's Fee Objections**

In her Fee Objections and in open Court the Debtor particularly expressed opposition to Schilling's charges billed in the few days prior to the Employment Notice and Order being entered, citing to the Handbook[21] in support of her argument. The Debtor did not put the Handbook or any portion thereof into evidence, but the Court may take judicial notice of the same. The Handbook provides in relevant part:

**4.  DUTIES OF A TRUSTEE IN THE ADMINISTRATION OF A CASE**
. . . .
**C.  COLLECTION AND LIQUIDATION OF ASSETS, 11 U.S.C. § 704(a)(1), AND ACCOUNTABILITY OF THE TRUSTEE FOR ALL PROPERTY RECEIVED, 11 U.S.C. § 704(a)(2)**
    . . . .
 **10)  EMPLOYMENT OF PROFESSIONALS**

   **a.  GENERAL STANDARDS**

   Under section 327, a chapter 7 trustee may employ professionals, including attorneys, accountants, appraisers or auctioneers to "represent or assist the trustee" in performing trustee duties under title 11. Those professionals may be awarded compensation for actual and necessary expenses, pursuant to section 330.

   The employment of professionals must be approved by the Court. Court approval must be sought prior to the rendering of any services. 11 U.S.C. 327(a). . . . Generally, courts do not authorize compensation for services rendered prior to court-ordered employment. However, some courts permit retroactive or nunc pro tunc orders of employment in special circumstances, but even where permitted, such orders should be rarely sought.

---

[21] U.S. Dept. of Justice, *supra* note 17.

Case 21-02007-TOM13    Doc 574    Filed 08/12/22    Entered 08/12/22 10:29:48    Desc
Main Document      Page 10 of 23

Handbook, § (4)(C)(10)(a). At the very beginning of the Handbook is an applicable portion that

the Debtor has overlooked:

### 1. INTRODUCTION

#### A. PURPOSE

. . . .
This Handbook is intended to establish or clarify the views of the United States
Trustee Program (Program) on the duties owed by a chapter 7 trustee to the
debtors, creditors, other parties in interest, and the United States Trustee.[22] The
Handbook does not present a full and complete statement of the law; it should
not be used as a substitute for legal research and analysis. . . .
. . . .
Nothing in this Handbook should be construed to excuse the trustee from
complying with all duties imposed by the Bankruptcy Code and Federal Rules
of Bankruptcy Procedure (Rules), local rules, and orders of the court.

Handbook, § 1(A) (footnote added). While the Handbook does provide that generally work should

not be performed before employment is sought, "the Handbook does not present a full and

complete statement of the law; it should not be used as a substitute for legal research and analysis."

*Id.* The Handbook makes clear that a Chapter 7 trustee must comply with local rules and orders in

addition to the Bankruptcy Code and Bankruptcy Rules. *Id.* Thus, the Handbook does not prevent

a Chapter 7 trustee from complying with local practices.

In *In re Hunanyan*, the Chapter 7 trustee filed an application to employ accountants

effective roughly two weeks before the application was filed, which was also the date work was

commenced. *In re Hunanyan*, 631 B.R. 904, 906, 913 (Bankr. C.D. Cal. 2021). The United States

Trustee[23] objected, stating that "the effective date of the employment should be the hearing date

or the date the Court signs the order, if there is no hearing." *Id.* at 907. The court noted that

"[u]nlike many sections of the Bankruptcy Code, neither section [Bankruptcy Code § 327

regarding employment of professionals or Bankruptcy Code § 330 regarding compensation of

---

[22] The Bankruptcy Administrator in Alabama and North Carolina.
[23] S*upra* note 22.

11

professionals] has a temporal requirement for when the application should be filed," nor does Rule 2014(a) of the Federal Rules of Bankruptcy Procedure which provides further guidance on employment of professionals.[24] *Hunanyan*, 631 B.R. at 908-09. The court further explains:

> Although there is no stated time limit in § 327, the implication is that the employment application should occur quickly. Logically, if Congress has required approval of employment to ensure that estate resources are not wasted and that professionals are qualified and not conflicted, this should generally occur before the administration of the estate proceeds very far. *Accord, In re Jarvis*, 53 F.3d 416, 419 (1995) (§ 327(a) neither expressly sanctions nor expressly forbids the post facto authorization of outside professional services.) Courts have repeatedly remarked on this ambiguity. *See, e.g., In re Singson*, 41 F.3d 316, 319 (7th Cir. 1994); *In re Triangle Chems., Inc.*, 697 F.2d 1280, 1289 (5th Cir. 1983) (The most that can be fairly said is that the language of both statute and rule contemplates prior authorization).
>
> Adding to this situation, every employment application where work must start immediately seeks a form of retroactive approval because an employment application cannot get approved until it is noticed pursuant to Fed. R. Bankr. P. 9013, requiring a written motion done within the time requirements of Fed. R. Bankr. P. 9006(d) which requires at least 7 days-notice.
>
> Where professional assistance is needed before the noticed hearing can be held, the trustees must determine if action is needed quickly to properly carry out required duties under 11 U.S.C. § 704(a), and a court review is necessarily done later of both the employment criteria and the fees incurred.

*Hunanyan*, 631 B.R. at 909-10 (footnote omitted).

*Hunanyan* addresses the practical reasons why work may begin before an employment order has been entered. In this Court the same holds true. The Court has previously explained to the Debtor that it is neither practical, nor possible, nor wise for the Court to rule on many motions

---

[24] The *Hynanyan* court's comments are in line with a bankruptcy treatise that is well respected and often cited by courts around the country. According to Collier on Bankruptcy:

> Section 327(a) provides that an attorney, accountant or other professional person providing services in connection with the bankruptcy proceedings may not be employed by the trustee except with the court's approval. . . . Although the statute does not require the approval to precede the retention, some courts have read this requirement into the statute. . . . A professional who acts for a trustee or on behalf of a trustee without obtaining court approval in accordance with any applicable local rules may be denied any compensation for such services. **Accordingly, professionals should comply with all local rules and established practices and procedures in the filing jurisdiction.**

3 Collier on Bankruptcy ¶ 327.03 (16th ed. 2022) (emphasis added).

or applications immediately after they are filed.[25] Sometimes a decision hinges on the disposition of other motions or filings. Sometimes it is helpful to see how a situation plays out since matters often take care of themselves. On a more basic level, given the sheer volume of filings that come before this Court,[26] some matters must take priority over others.

This Court, as well as some other courts in this District, has a routine process for ruling on applications to employ professionals and other routine matters that are rarely subject to objection. In such cases, the Court issues a "negative notice and order." Since those outside of the court system may not be familiar with the terminology, an explanation could be helpful.[27] In general, a negative notice and order provides notice that a motion or application has been filed and that, absent objection within a certain time frame, the requested relief is granted pursuant to the terms of the notice and order. Many motions and applications may be disposed of using this process; a negative notice and order may save time and expense on a routine issue that is likely to be granted or approved with no hearing unless someone objects. A negative notice and order preserves the rights of the movant or applicant and other interested parties since, if the debtor or some other party objects, the Court will then hold a hearing to consider the relief requested and the objection.

This Court's Employment Notice and Order regarding the Employment Application was prepared according to the Court's usual procedure, and like other similar orders, this one provided that absent objection during the objection period, the applicant "shall be and hereby is **APPROVED**" as counsel. Doc. 37. In this case, the Chapter 7 Trustee was appointed on September 7, 2021, the Employment Application was filed the next day on September 8, 2021,

---

[25] Despite the Debtor's belief, what she considers to be a delay in ruling on one of her motions or objections does not signal a conspiracy engaged in by this Court for "revenge-taking" against her.

[26] In addition to the examples given, other factors may stand in the way of immediate rulings such as weekends, federal holidays, leave taken by chambers and clerk's office staff who process this Court's orders, and emergencies in other cases, among other things.

[27] The practical effect of notice and orders is that the Court's ruling may become effective more quickly than noticing a motion for hearing, waiting through the notice time, holding the hearing, then issuing an order.

and this Court's Employment Notice and Order was entered September 14, 2021. There was no delay between the Chapter 7 Trustee's appointment and the filing of the Employment Application.

A discussion of the Chapter 7 Trustee's duties is necessary to address the Debtor's Fee Objections. It is the duty of a Chapter 7 trustee to review a debtor's schedules for potential assets that could be used to pay unsecured creditors and, if assets are found, to liquidate the assets and distribute the proceeds. Generally the investigation should be started quickly to prevent the risk of assets being lost or declining in value.[28] The timely filing of an application to employ then the entry of a negative notice and order may allow a trustee or his professional to begin preserving assets immediately. In this case, the Debtor listed three lawsuits on her initial Schedule A/B. Because the Debtor had filed a Chapter 7 the Chapter 7 Trustee "stepped into the shoes of the Debtor" and became the plaintiff in those lawsuits. The Trustee had no way of knowing whether the Debtor would attempt to settle or otherwise dispose of the lawsuits (or any other assets) and no way of knowing the potential value of those suits without further investigation since the Debtor valued them in her schedules as "unknown." As it turns out, Schilling's investigation revealed that the Debtor had six lawsuits pending in the state court, more than originally scheduled. Schilling's timely investigation perhaps preserved the value of estate assets.

As demonstrated, when it appears there could be assets to pay creditors, it is not practical for trustee's counsel to put off investigation for weeks before an order approving employment could be entered. Safeguards are still in place to make sure that counsel does not act inappropriately. 3 Collier on Bankruptcy ¶ 327.03 (16th ed. 2022) ("A professional who acts for a trustee or on behalf of a trustee without obtaining court approval in accordance with any applicable

---

[28] A debtor should not be offended by a quick start to an investigation. Someone who takes an appointment to serve as a trustee should not otherwise have a connection to the case; thus, the trustee will not know the debtor and has no idea how the debtor will act regarding asset preservation. A trustee should act quickly if he or she has identified assets that should be preserved.

14

local rules may be denied any compensation for such services."). If someone had objected to Schilling's employment during the period for objections, then this Court would have held a hearing on the Employment Application and the objections before entering an order. If the Court denied the Employment Application, Schilling would not receive any compensation for whatever work he had done.

Besides arguing that Schilling had no authority to work on this case prior to the Employment Notice and Order, the Debtor further argues that Schilling's work should have stopped once she decided to convert her case to Chapter 13. The Debtor filed her Motion to Convert From Chapter 7 to Chapter 13 by a Debtor (Doc. 51) on September 20, 2021, and this Court's Order (Doc. 78) converting the case was entered October 21, 2021; thus the Debtor's case was pending as a Chapter 7 case until the conversion on October 21, 2021. The pre-bill worksheet evidences that Schilling's last work, namely emailing the Chapter 7 Trustee and preparing the Fee Application, was performed on October 21, 2021. Schilling billed only for time while the case was pending as a Chapter 7.[29]

In addition, the debtor has complained about both the work performed by Schilling and the amount of time that he spent. As mentioned, on Schedule A/B the Debtor listed three pending state court cases in which she was the plaintiff, and on the Statement of Financial Affairs she listed four; when Schilling investigated, he found six. That the Debtor omitted information about her state court suits could have raised a red flag regarding other potentially omitted or misrepresented assets. According to Schilling, he performed in-person research of various records, particularly probate records. The Debtor has argued that Schilling should have saved time by doing all of his research online, and Schilling responded that he does not have the capability to do so. The Debtor had an

---

[29] Bankruptcy Code § 330(a)(6) codified existing case law providing that a professional may be compensated for his or her time preparing a fee application. 3 Collier on Bankruptcy ¶ 330.03[16][a][i] (16th ed. 2022).

15

issue with Schilling's bill and she took the appropriate step of objecting, but she did not provide any support for her arguments that the amount of the bill is inappropriate. This Court will not second guess the method counsel for the Trustee used to perform his job so long as the time and rate satisfy the criteria used to consider the appropriateness of his fee application. It is the responsibility of this Court to determine whether or not the tasks undertaken and the time spent by Schilling were appropriate, and not to tell him how he should have gone about it.

The Debtor has made other objections to Schilling's Fee Application that the Court can dispose of quickly. The Debtor argues that she "has repeatedly provided to this court ample evidence of the necessary [sic] to conduct a forensic audit of Schilling's invoice." Doc. 548, at 3. It is true that the Debtor has repeatedly requested a "forensic audit" of Schillings fees. This Court has explained to the Debtor that the court system does not pay for forensic audits. The Court is not sure why the Debtor persists in believing the court system would do so. The Debtor also complains that J. Thomas Corbett, the Bankruptcy Administrator, and Jon Dudeck, attorney with the Bankruptcy Administrator's Office, "have each failed to be responsive to [Debtor's] concerns about Schilling's invoice." Doc. 548, at 3. The Bankruptcy Administrator's Statement of Review explains why the Bankruptcy Administrator did not object to Shilling's Fee Application. As evidenced by the record, the Debtor filed a subpoena[30] to Mr. Corbett, the Bankruptcy Administrator. Mr. Corbett moved to quash the Debtor's subpoena and filed a response.[31] The Bankruptcy Administrator's office properly responded to the Debtor's requests for information by

---

[30] A Subpoena to Appear and Testify at a Hearing or Trial in a Bankruptcy Case (or Adversary Proceeding ) to J. Thomas Corbett was filed by the Debtor on April 19, 2022. Doc. 530. It is not clear why the subpoena was served on Mr. Corbett in his individual capacity instead of in his capacity as Bankruptcy Administrator.
[31] The Non-Party J. Thomas Corbett's Motion to Quash (Doc. 541) was filed on April 25, 2022, the same day as his Non-Party J. Thomas Corbett's Response to Subpoena (Doc. 542) was filed.

responding on the record. Perhaps the Bankruptcy Administrator's Office did not respond in the way the Debtor would have liked, but the Office responded appropriately.

The Debtor has made many arguments throughout this case for which she has not provided evidentiary support and, while clearly the Debtor or someone assisting her has done a great deal of research, the Debtor has not presented any facts, testimony, evidence, or law that backs up her arguments. Further, at the hearing on the Fee Application and the Fee Objections, the Debtor presented no witnesses, no exhibits, and no other evidence supporting her position other than her own testimony. However, Schilling presented exhibits as well as his testimony supporting the work he performed on behalf of the Chapter 7 Trustee. The Fee Application has been reviewed by the Bankruptcy Administrator who has no objection. The Chapter 13 Trustee likewise did not raise an objection. However, the ultimate determination of the fees and expenses to be awarded is the responsibility of this Court, and in doing so, the Court will consider the law, the testimony and evidence of Schilling, the testimony of the Debtor, the recommendation of the Bankruptcy Administrator, and other filings within this case. Upon conducting its review, if the Court determines that a portion, or all, of the fees or of the expenses requested are not appropriate, those portions will not be approved for payment.

**B.     Evaluation of the Fee Application under *Norman* and *Johnson***

The Bankruptcy Code provides that a professional person employed to represent a trustee in bankruptcy may be awarded "reasonable compensation for actual, necessary services rendered" and "reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1)(A)-(B). A professional person seeking fees and expenses must file a detailed application which includes descriptions of the services rendered, the amount of the hourly rate requested and the total number of hours the applicant alleges were expended. Fed. R. Bankr. P. 2016; *Loranger v. Stierheim*, 10 F.3d 776 (11th

17

Cir. 1994), *Brake v. Tavormina (In re Beverly Mfg.)*, 841 F.2d 365 (11th Cir. 1988), *Am. Benefit Life Ins. Co. v. Baddock (In re First Colonial Corp. of America)*, 544 F.2d 1291 (5th Cir. 1977), *In re Gold Seal Prods. Co., Inc.*, 128 B.R. 822 (Bankr. N.D. Ala. 1991). After such application is filed, the burden remains on the applicant to establish that the fees and expenses requested, including the hourly rate, the hours expended, and the costs, are reasonable and necessary. The Court must then review the application, challenge any fees or charges that may be inappropriate, even in the absence of an objection, and determine the reasonableness of the fees and expenses requested. *Gold Seal*, 128 B.R. at 827. If the Court determines that the amounts requested are either unreasonable or unnecessary, then the Court "itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees" must determine, set, and award an appropriate amount. *Norman*, 836 F.2d at 1303.

In examining professional fees the Court must go through several steps:

1. Determine if the fee application is sufficient
2. Independently review the application as to the reasonableness and necessity of the amounts requested
3. Make an initial determination as to an appropriate fee award by:
   a) determining the nature and extent of the services
   b) determining the value of the services
   c) considering the factors in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)
4. Determine the Lodestar
   a) Reasonable hourly rate considering some or all of the *Johnson* factors
   b) Reasonable number of compensable hours
   c) Adjustment to the Lodestar
5. Conclusion as to amount of fees due
6. Review of expenses and conclusion as to amount due

A bankruptcy judge has broad discretion in determining reasonable fees for professionals in bankruptcy matters. *First Colonial*, 544 F.2d at 1298. However, the approach in reviewing professional fees as adopted by the United States Supreme Court and the Eleventh Circuit Court

18

of Appeals is designed to be objective. *See Norman*, 836 F.2d at 1299. This approach also provides a standardized review that professionals can rely upon when requesting approval of their fees and helps ensure that professionals in bankruptcy cases are paid no less and no more than outside the bankruptcy arena.

### 1. Sufficiency of the Fee Application

Schilling has provided a cover sheet summarizing his employment, the period for which he seeks compensation, the fees and expenses he seeks, and notes that he has not previously filed an application or previously received fees and expenses. In addition, Schilling provided a more detailed explanation of his services, attaching his bill itemizing the work performed, fees charged, and the amount of time spent.

### 2. Independent Review of the Application

The Court independently reviewed the Fee Application and heard the testimony at the hearing of this matter. This Court has also considered the Fee Objections filed by the Debtor.

### 3. Initial Determination as to an Appropriate Fee Award

#### a) Nature and Extent of the Services

Schilling was hired to assist the Chapter 7 Trustee in his investigation of the Debtor's assets, including state court lawsuits, that could potentially be liquidated for the benefit of unsecured creditors and to otherwise assist the Trustee in legal matters. The Fee Application and attached pre-bill worksheet indicate Schilling reviewed the Debtor's bankruptcy filings and various state court records, communicated with the Debtor, the Debtor's former counsel, and with state court defendants' counsel, and prepared filings in the Debtor's case, among other things. Schilling's work fell within the scope of the Employment Application.

#### b) Value of the Services

The work performed by Schilling primarily revolved around investigating and attempting to collect assets of the estate, particularly in regard to numerous lawsuits the Debtor had filed in state court. The Debtor converted the case to Chapter 13 prior to any asset collection. Nonetheless, the work performed by Schilling was necessary and helpful.[32]

c) The *Johnson* Factors

1.     Time and labor required. Schilling's time and labor, as set out in the Application, were reasonable considering his duties. The Debtor provided incomplete information on her schedules about the number of lawsuits she had pending against others in state court. Schilling was required to investigate these as well as other potential assets of the Debtor.

2.     Novelty and difficulty of the questions. The issues in this case were not novel.

3.     Skill requisite to perform the services properly. Schilling has the skills that were necessary to perform the services requested and in fact has served in this capacity for several decades.

4.     Preclusion of other employment by the attorney due to acceptance of the case. Schilling states in his Fee Application that he was not precluded from taking other employment due to this case.

5.     Customary fee. Schilling's requested fee in this case is in line with the prevailing market rate and consistent with his charges to other clients.

6.     Whether the fee is fixed or contingent. All fees in this case, as in any bankruptcy case, are subject to the contingency of approval by this Court. Further,

---

[32] Schilling's investigation may have been a factor that prompted the Debtor to convert her case to Chapter 13. The Debtor's confirmed Plan provides that creditors will be paid 100% of the amount of their claims.

Schilling's fee is contingent in another respect – he will get paid only if the Debtor continues to make her Chapter 13 payments.

7.      Time limitations imposed by the Court or other circumstances. This was not an applicable factor.

8.      Amount involved and results obtained. The Debtor converted her case to Chapter 13 prior to the collection any assets for the benefit of unsecured creditors. However, since the Debtor converted her case and now has a confirmed Plan, her unsecured creditors will now be paid in full.

9.      Experience, reputation and ability of attorneys. Schilling has practiced before this Court for a number of years and has been frequently hired by all of the Chapter 7 trustees in this division. He is held in high regard by other members of the local bar.

10.     Undesirability of the case. The Court is unaware of any reason undertaking this matter would have been undesirable.[33]

11.     Nature and length of the professional relationship with the client. Schilling has for several years frequently represented the Chapter 7 Trustee regarding various matters.

12.     Awards in similar cases. The requested fee is in line with fees approved in similar cases.

4. Determination of the Lodestar

    a) Reasonable Hourly Rate

---

[33] At the time Schilling was employed there was no obvious reason why taking the case would be undesirable. If the Court considered everything that has transpired since that time then the Court may have reached a different conclusion.

Case 21-02007-TOM13    Doc 574    Filed 08/12/22    Entered 08/12/22 10:29:48    Desc
Main Document       Page 21 of 23

Schilling has requested his typical fee of $400 per hour; the prevailing rate for bankruptcy attorneys in this area ranges from $195 to $450 per hour in consumer cases.[34] Schilling's hourly rate has been approved in numerous similar cases. Schilling's experienced, long-time paralegal has a fee of $90 per hour.

### b) Reasonable Number of Compensable Hours

The Court has reviewed this in light of all of the *Johnson* factors and finds that the number of hours Schilling spent on this case and for which he has requested compensation is reasonable. According to the Fee Application, Schilling and his paralegal actually spent 15.20 hours working on this case for a total of $5,677; however, Schilling voluntarily reduced his requested fees to $4,000. The Court finds that the reasonable number of hours for Schilling and his paralegal is 15.20.

### c) Adjustments to the Lodestar

After determination of the reasonable hourly rate and the reasonable number of hours expended, the Court can further adjust the lodestar based on the services performed or for the results obtained so that the end result is not excessive. This may be done by identifying the number of hours related to specific unsuccessful matters or by merely reducing the entire application by some proportionate amount. *Norman*, 836 F.2d at 1302. Schilling has voluntarily reduced his requested fee to $4,000, approximately 70% of his hourly rate times the number of hours he worked. No further adjustment is warranted.

### 5. Conclusion as to the Amount of Fees Due

---

[34] In large Chapter 11 commercial cases hourly rates in the community tend to be higher.

Based on the conclusions in this Memorandum Opinion, the Court finds that Schilling is due fees in the amount of $4,000, having been already reduced per his request. The requested amount is lower than the lodestar calculation.

6. Expenses

Schilling's pre-bill worksheet attached to his fee application itemizes the expenses requested; the Bankruptcy Administrator has no objection to the expenses. The Court has reviewed the requested expenses and concludes that expenses in the amount of $51.53 are approved.

**CONCLUSION**

Schilling is due reasonable fees of $4,000 and expenses of $51.53. Accordingly, it is hereby

**ORDERED, ADJUDGED AND DECREED** that the Fee Application is approved in the amount of $4,000 in fees and $51.53 in expenses. It is

**FURTHER ORDERED** that the Chapter 13 Trustee is hereby authorized and directed to pay the fees and expenses approved herein as an administrative expense claim with pro rata distributions on said claim consistent with other claims allowed and paid pursuant to 11 USC § 503(b).

Dated: August 12, 2022

/s/ Tamara O. Mitchell
TAMARA O. MITCHELL
United States Bankruptcy Judge

TOM/dgm

23